THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR
B. BAKER, Appellant.

*Burglary and larceny — breaking and entering a barn — corroboration of accomplices — new trial for newly-discovered evidence, when refused.*

Upon the trial of an indictment for breaking and entering a barn and carrying away oats, accomplices of the defendant testified that the oats were carried to a fence dividing the defendant's premises from those of the complainant, where they were put into a wagon and carried to the defendant's barn, and that during the transaction the defendant said that he had lost his hat. They also testified that the defendant saw them after the burglary and attempted to induce them to leave the State. The defendant admitted having seen the accomplices after the burglary, but denied having tried to induce them to leave the State.

Several witnesses who were not accomplices of the defendant gave evidence tending to show that a hat found near the scene of the crime was that of the defendant, and other disinterested witnesses testified that they had traced a scattering of oats from the barn of the complainant to the line fence; that they found a small quantity of oats on the defendant's side of the fence, and that wagon tracks led from there to the defendant's barn.

*Held,* that the evidence of the accomplices was sufficiently corroborated to justify the submission of the case to the jury;

That a new trial, asked for upon the ground that the defendant was misled, and prevented from proving an *alibi* because of a variance between the date of the offense as charged in the indictment and the date proved upon the trial, was properly denied, where it appeared that the prisoner must have known at the time of the trial of the ability of the proposed witnesses to testify to the facts tending to establish the *alibi* and that two of such witnesses were present in court, and had had two days after the prosecution proved the date of the offense and before the trial closed, in which to give testimony in support of the *alibi.*

APPEAL by the defendant, Arthur B. Baker, from a judgment of the County Court of Niagara county, in favor of the plaintiff, rendered on the 14th day of June, 1897, and entered in the office of the clerk of the county of Niagara, upon the verdict of a jury convicting the defendant of the crimes of burglary in the third degree and grand larceny in the second degree, and also from an order denying the defendant's motion for a new trial.

Among the grounds of the motion for a new trial was, as the defendant claimed, the existence of newly-discovered evidence. The defendant was indicted in conjunction with Charles O'Connell and Edward Blimm for the crime of burglary in the third degree and

grand larceny in the second degree, committed on or about the 13th day of November, 1896, at the town of Cambria, in the county of Niagara, by breaking and entering a barn of Calvin W. Thompson with intent to commit larceny and stealing and carrying away a quantity of oats of a value exceeding twenty-five dollars and being the property of the said Thompson.

Baker elected to take a separate trial and was tried for these offenses on the 2d, 3d and 4th of June, 1897. He was convicted of the offenses charged and his counsel moved for a new trial upon affidavits and upon the proceedings of the trial, which motion was denied and the court sentenced the defendant to be confined in Auburn State's prison for the period of one year and seven months.

*D. E. Brong,* for the appellant.

*Abner T. Hopkins, District Attorney of Niagara county,* for the respondent.

WARD, J.:

The complainant Thompson and the defendant Baker, at the time of the commission of the offense charged upon the defendant, were farmers in the town of Cambria, Niagara county, occupying adjoining premises, their houses being about 150 rods apart. The complainant's and the defendant's orchards upon their respective farms were separated by a line fence. In the forepart of the month of November, 1896, Thompson's barn was entered in the night, his granary broken open and about 180 bushels of oats taken therefrom of the value of from 20 to 21 cents per bushel. The principal witnesses for the People were Christopher Gershmeir and Edward F. Blimm, who were employed at the time of the transaction as laborers by the defendant and who were living at his house. They testified, in effect, that on the night of the burglary, at the instigation of the defendant, they in company with the defendant and O'Connell went to Thompson's barn, broke into the granary, put the oats into bags that had been obtained at the defendant's, carried the bags through Thompson's orchard to the line fence between the two orchards, put the bags over the fence, put them in a wagon and carried them to the defendant's barn; that there were two wagon loads; that they commenced this work in the evening, after supper, and finished it at four o'clock in the morning; that during the trans-

action the defendant said he had lost his hat; that they looked for it but did not find it; that the defendant had several teams engaged in his business, and that shortly before the burglary the defendant had used up his oats in the barn and had none.

Gershmeir testified that after the burglary he remained at the defendant's until about the 15th of November, 1896, and then went away, and that in February he told of this transaction to one Luke-man; that afterwards he was subpœnaed to go before the grand jury of Niagara county; that he, about that time, saw the defendant at Sanborn, in Niagara county, and that he went with the defendant and O'Connell to Niagara Falls and that they directed him to go to Canada; that the defendant gave him fifty cents and that he went to Canada and from there to Detroit, at which point he was arrested and brought back.

The defendant testified upon the trial in his own behalf, and in relation to this transaction said that he did go to the Falls with O'Connell and Gershmeir; that at that time he knew that Gersh-meir had been subpœnaed that day to appear before the grand jury, but he denied advising him to go to Canada or furnishing him any money.

Blimm testified that on the same morning that he was arrested on account of this burglary, the defendant came to him in Buffalo and informed him that he had been arrested and had given bail, and that he (the defendant) wanted Blimm to go to Pittsburgh. Blimm replied that he did not think it was necessary to leave the city, whereupon defendant gave him five dollars and told him to keep shady in the city.

The defendant testified that he did go to Buffalo and saw Blimm at his residence and paid him five dollars, but claimed that he paid it upon his wages, and did not advise him to go to Pittsburgh; but defendant admitted that this visit to Buffalo was shortly after he had been arrested for the burglary and larceny.

Frances Blimm, the mother of the witness Blimm, testified that Baker, on this occasion, came to her house in Buffalo the day° that her son was arrested and in the morning, quite early, and that they talked low together and that she did not hear what was said.

Shortly after the burglary a hat was found near the scene of the affair and several witnesses who were not accomplices of the defend-

ant gave evidence tending to show that it was the defendant's hat; two or three other disinterested witnesses testified that soon after the burglary they examined the premises and traced a scattering of oats from the barn of Thompson to the line fence between his and defendant's premises through the orchard, and that a small quantity of oats were found near the fence on the defendant's side of the line; that the indications were that persons had gotten over it, and that wagon tracks were traced from this line in the orchard toward the defendant's barn.

The principal point urged by the appellant's counsel upon this appeal is that there was not sufficient corroboration of the two accomplices of the defendant in the crimes to justify the trial court in submitting the case to the jury.

We are of the opinion that the confessions of the defendant as to the circumstances under which he saw these accomplices, as we have detailed, together with the evidence as to the hat, and as to the tracing of the oats and wagon, formed sufficient evidence to justify the trial court in submitting the question to the jury. The rule in such cases is clearly stated in *People* v. *Elliott* (106 N. Y. 292) where Judge Earl, after commenting upon certain circumstances developed in that case, says : "Each circumstance, taken by itself, is quite inconclusive, but when considered together they certainly furnish some corroborative evidence. It is not necessary that the corroborative evidence of itself should be sufficient to show the commission of the crime or to connect the defendant with it. It is sufficient if it tends to connect the defendant with the commission of the crime. Nor need the corroborative evidence be wholly inconsistent with the theory of the defendant's innocence. The court before it should submit the case to the jury should be satisfied that there is some corroborative evidence fairly tending to connect the defendant with the commission of the crime; and when there is, then it is for the jury to determine whether the corroboration is sufficient to satisfy them of the defendant's guilt. As we said in *People* v. *Everhardt* (104 N. Y. 591) 'the law is complied with if there is some evidence fairly tending to connect the defendant with the commission of the crime so that the conviction will not rest entirely upon the evidence of the accomplice.'" (*People* v. *Terwilliger*, 26 N. Y. Supp. 677.)

Numerous exceptions were taken upon the trial by the defendant, upon the court's rulings as to the admissibility of evidence, none of which impress us as containing reversible error; and we deem it necessary to consider but one objection to evidence which is most earnestly urged by the appellant's counsel, though there was no exception taken to the ruling.

Upon the cross-examination of Mr. Thompson, the complainant, he was asked if he had any ill-feeling toward the defendant, and if he had expressed it. The witness said that he had some deal with the defendant and that the defendant owed him something; that he had mistrusted, and still mistrusted, that Baker was the man that took his oats; that he had never had any ill-feeling toward Baker until a little while, " until I had my opinion of the family."

On the redirect examination he was asked by the district attorney if he had had claims against the defendant at different times and the witness answered : " I never had much feeling about the transactions. There was something about a note. I can tell you the circumstances. Q. Well, what was it ? [This was objected to by defendant's counsel as incompetent.] The Court: You went into it, go on. [Overruled.] * * * A. Well, I had two or three notes against both at different times. I had a note against him and his mother signed it ; and she told me she never put her name to it, and never authorized him to do it. * * * The Court: The evidence, so far as what Mrs. Baker said, may be stricken out. Mr. Brong: I wish to have my protest noted in behalf of the defendant that the striking of it out does not cure the error The Court : Well, the court will order it stricken out."

The statement of the witness in regard to what the mother had said was not strictly responsive to the question put to the witness, and the defendant's counsel to have raised the question should have moved the court to have the evidence stricken out, and as he did not do so, and when the court of his own motion ordered it stricken out, the counsel for the defendant answered in the language stated. Had the counsel desired the striking out of this evidence to have been more emphatic, or had he desired the court, in addition to trisking out the evidence, to charge the jury to disregard it, he should have made that request to the court; and had the court

refused that request, then the proper exception to that refusal might
have brought up the question of error that is raised in the appel-
lant's points in regard to this matter.

Upon the motion for a new trial the counsel for the defendant
read several affidavits to the effect that during the evening of the
5th of November, 1896, and up to about one o'clock on the morn-
ing of the sixth, that defendant was at a little village called Pekin,
about two miles from the defendant's residence, spending the most
of his time at a hotel kept by one Richard McCarthy; that the
defendant and his friends who made the affidavits were having a
jollification over the result of the election which had occurred on
the third day of November, two days before. The affiants gen-
erally fix the time as being two days after this election, and state that
that was the reason why they remembered the date. One of the
affiants, Joseph H. Parker, was the father-in-law of the defendant,
who lived at Pekin and kept a store there, and he states that on that
evening the defendant purchased an article at the store which was
charged on Parker's books to the defendant; that at that time the
defendant had not married his daughter, but had called to see her
in the evening.

The defendant claims that a new trial should be granted upon
these affidavits because he was misled as to the time when the
People charged the commission of the burglary, the indictment
stating that it was on or about the thirteenth of November, and
that, until it was disclosed upon the trial by the evidence of the two
accomplices that the burglary was committed on the night of the
fifth and the morning of the sixth of November, he had no notice
that that was the time that the offense was charged as having been com-
mitted, and, therefore, was not prepared to show his alibi at that time.

The accomplices did state that the burglary was committed on
Thursday of the first week in November, but they gave no facts
showing why they should have remembered the date as they were
at this house for several days before and after the fifth of Novem-
ber. They state that it took the four men from some time after
supper until four o'clock the next morning to go that short distance,
bag 180 bushels of oats and take them to the defendant's barn.

Assuming that the defendant was at Pekin on the night in ques-
tion and returned to his home about one o'clock the next morning,

he might have had ample time with his three associates to burglarize the barn and take the oats before four o'clock in the morning ; therefore, the evidence as to the dates and as to what might have occurred on the date fixed by these witnesses is quite unsatisfactory and greatly impairs the assumed alibi. It is not likely that these men went upon the premises of Thompson before his family had retired, and it is more than probable that the burglary took place late in the night.

As we have said, the trial lasted three days. The father-in-law attended the trial as did Richard McCarthy, the hotelkeeper. Immediately upon the People fixing the fifth of November as the time, it is remarkable that neither the defendant nor these two affiants, the father-in-law and McCarthy, should have remembered the jollification on that night or recalled any of the circumstances attending the alibi which is embraced in these affidavits. They had two days before the expiration of the trial to find out where the defendant was that night and call the witnesses to the transaction.

The same rule which applies to civil cases in regard to new trials, upon the ground of newly-discovered evidence, prevails in criminal cases, and that rule is well stated by O'BRIEN, J., in *Dillingham* v. *Flack* (17 N. Y. Supp. 868) quoting from *Raphaelsky* v. *Lynch*, 34 N. Y. Super. Ct. 31 : "The following principles are settled in regard to granting new trials on the ground of newly-discovered evidence : The testimony upon which the motion is based must have been discovered since the former trial ; it must have been such as could not have been obtained with reasonable care before ; it must be material to the issue ; it must go to the merits of the case and not to impeach the character of former witnesses, it must not be cumulative. The facts must be strong and the party averring them free from *laches*."

The defendent himself was a very prominent actor at this jollification according to his affidavit, and if true the circumstances must must have been impressed upon his memory so that he could have recalled it with a slight effort. There was *laches* in this regard. The defendant should not be permitted to lie by and await the result of a trial, and when the result is adverse to him claim a new trial for the want of evidence that, with reasonable diligence, he could have produced upon the trial.

The learned trial judge tried the case fairly and impartially. He

knew the witnesses and he was in a better situation to judge than we can be, from the surroundings and atmosphere of the trial, of the strength and *bona fides* of the motion for a new trial. The granting or refusing of it was very largely in his discretion, and we cannot say that that discretion was abused; and in this case as in all others the motion for a new trial upon the ground of newly-discovered evidence is not governed by any well-defined rule, but is addressed to the sound discretion of the court, and whether it should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view, solely, the attainment of that end. (*Barrett* v. *The Third Avenue R. R. Co.*, 45 N. Y. 632.)

We have reached the conclusion that in denying the motion for a new trial the substantial rights of the defendant were not violated, and that the affidavits of newly-discovered evidence do not present a case for a new trial.

The judgment and order appealed from should be affirmed.

All concurred.

Conviction, judgment and order affirmed, and judgment to be entered pursuant to section 547 of the Code of Criminal Procedure, and when so entered it is to be certified and proceedings remitted to the County Court of Niagara county with directions to proceed.