(35 Misc. Rep. 678.)

### In re McMANUS.

(Surrogate's Court, Albany County. August, 1901.)

1. SURROGATE'S DECREE—OPENING—NEWLY-DISCOVERED EVIDENCE.

Under Code Civ. Proc. § 2481, subd. 6, giving a surrogate authority to open or set aside a decree or order of his court or grant a new hearing, a surrogate may, in his discretion, open a decree because of newly-discovered evidence which is material and not cumulative, where due diligence is shown.

**2. SAME.**

An account of an administratrix had been surcharged with funeral expenses deemed excessive, and with an amount of a note due the testator, which the administratrix had never collected. Thereafter an application was made to open the decree because of newly-discovered evidence that the intestate himself had selected an expensive casket for his burial, which had been reserved for him, and in which he was buried, and further evidence that the indorser of the note and the maker were insolvent at its maturity, and that other judgments against them apparently paid were not in fact so paid, and that knowledge of these matters had come to the administratrix after the decree. *Held*, that the decree was properly opened.

Petition of Ellen McManus, administratrix de bonis non of Anthony McKnight, to compel a settlement of the accounts of John J. Harrigan, deceased administrator of said McKnight. Motion by personal representatives to open the decree hereinbefore entered, and have a new hearing on certain of the issues. Motion granted.

J. H. Clute and E. J. Meegan, for the motion.
John. J. McManus, opposed.

FITTS, S. This is a motion made by the personal representatives of the estate of John J. Harrigan, deceased, under subdivision 6 of section 2481 of the Code of Civil Procedure, to open the decree heretofore entered herein, and for a new hearing upon two of the issues litigated in this proceeding. The authority (subdivision 6 of section 2481 of the Code of Civil Procedure) under which it is claimed this court has the power to grant the desired relief is as follows:

"Sec. 2481. A surrogate, in court or out of court, as the case requires, has power * . * * Subd. 6. To open, vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision, must be exercised only in a like case and in the same manner, as a court of record and of general jurisdiction exercises the same powers. Upon an appeal from a determination of the surrogate, made upon an application pursuant to this subdivision, the general term of the supreme court has the same power as the surrogate," etc.

The intestate, Anthony McKnight, died at the city of Albany, N. Y., on the 14th day of April, 1889, intestate. Thereafter, and on the 20th day of April, 1889, letters of administration were issued upon the petition of Ellen McManus to John J. Harrigan, of this city. Mr. McKnight at the time of his death was unmarried, and left, him surviving, no ancestors and no descendants. His estate consisted of personal property and principally of money in the savings bank, and was of the value of about $5,000. He resided at the time of his death on Canal street, this city, a short distance from the undertaking rooms of John Harrigan Sons, and the funeral services were held from the rooms of said firm, and were performed by them; and, after the appointment of the administrator, John J. Harrigan, who was a member of the above-named firm, a claim for the same was presented to him, amounting to $352.52, which was paid shortly thereafter. The firm of John Harrigan Sons consisted at that time of the administrator, John J. Harrigan,

Daniel S. Harrigan, Harvey T. V. Harrigan, and Joseph F. Harrigan. John J. Harrigan died in the year 1893, leaving a last will and testament, which was admitted to probate, and the persons named therein as executor and executrix respectively, viz. Harvey T. V. Harrigan, his brother, and Ellen E. Harrigan, his sister, qualified and entered upon the discharge of their duties. Thereafter and during the year 1896 Mrs. McManus was appointed administratrix de bonis non of the estate of Anthony McKnight, deceased, and shortly thereafter commenced a proceeding in this court to compel the personal representatives of the estate of John J. Harrigan to account for the property of Anthony McKnight which had come into his possession as such administrator. Such proceedings were subsequently had that the personal representatives of John J. Harrigan filed an account in this court in this proceeding. Specific objections were taken to said account by the administratrix de bonis non, who objected to certain items of disbursements claimed to have been made by the administrator in the course of his administration of the estate. Objections were also taken to the amount paid for the funeral expenses, claim being made that it was excessive, and also to the failure of the administrator to collect the amount due upon a promissory note held by Mr. McKnight in his lifetime, made by one William Kelly, and indorsed by his brother Henry Kelly, and which became due after the death of Mr. McKnight; the claim being made that, if the administrator had proceeded with diligence to collect the claim, the same could have been collected, and that by reason of his failure to take the necessary steps to procure its collection the estate of McKnight had been lessened to the extent of the amount due upon the note, together with its accumulated interest. Upon the trial of the issues thus raised, considerable testimony was taken. With reference to the funeral expenses it appeared that the amount charged for the casket was $175. In explanation of the reason why such an elaborate and expensive casket had been procured, Mr. Harvey T. V. Harrigan, one of the accounting parties herein, was sworn as a witness, and gave testimony with reference to the same. He testified that, but a short time prior to his death, Anthony McKnight called at their undertaking rooms and examined the casket in which he was subsequently interred, stating that he desired to be buried in the same, and asked them to furnish that particular casket for his funeral. Objection was taken to the receipt of this testimony under section 829 of the Code of Civil Procedure, but the objections were overruled and the testimony was received. Upon the determination of this matter, in announcing my decision, I stated that my attention had been called to a recent decision in the court of appeals holding that the witness was incompetent to give testimony of this character, and that in the determination of the issues involved I should disregard the testimony. I accordingly held that the sum of $200 was a reasonable charge for the funeral expenses of the deceased, reduced the amount of the funeral expenses to that extent, and surcharged the account with $150.52. It appeared from the testimony that the note made by William Kelly and indorsed by Henry Kelly, and which became due after

the death of Anthony McKnight, was for $600, and indicated a loan to that extent previously made by McKnight to Kelly; that the note became due a short time after the death of McKnight, but that no steps were taken towards its collection until about 18 months after its maturity; that then action was commenced upon the same by Mr. Meegan for the administrator, and judgment subsequently recovered thereon, and execution issued and returned unsatisfied. No explanation was given why the administrator had failed to take any steps looking to the enforcement of this claim prior to the time it was placed in the hands of Mr. Meegan, and no testimony was given showing either the solvency or insolvency of the maker or indorser, while it appeared that subsequent to the maturity of this note, and prior to the commencement of the action for the collection thereof, judgments aggregating $7,000 or $8,000 were docketed against the maker and indorser, and executions issued thereon and returned unsatisfied. I found from the testimony that the administrator had been negligent in not enforcing the payment of this note, and surcharged his account with the amount thereof, together with the interest thereon from the time of its maturity up to the time of the entry of the decree herein.

The decree in this proceeding settling and determining the accounts was entered in this court on the 25th day of April, 1900. On the 11th day of March, 1901, the personal representatives of the deceased administrator made a motion in this court to open the decree heretofore entered herein, and for a new hearing upon the two issues above set forth, upon the ground of newly-discovered evidence. The affidavits upon which this motion was based were made by Harvey T. V. Harrigan, James Fogerty, and Henry Kelly. Mr. Harrigan in his affidavit stated that he is the active executor of the estate of John J. Harrigan, deceased, and that within a short time prior to the making of the motion he had learned that one James Fogerty was present at the undertaking rooms of the firm of John Harrigan Sons, 21 Canal street, this city, and heard a conversation between McKnight and John J. Harrigan, with reference to the purchase of a casket in which he was subsequently interred; that the conversation occurred a short time prior to the death of said McKnight; and that he expected that Fogerty would give testimony with reference to the matters set forth in his own affidavit, which forms part of the moving papers. In the accompanying affidavit of said Fogerty he avers: That he was at the warehouse aforesaid upon the occasion referred to in the affidavit of Harvey T. V. Harrigan, and while there McKnight entered with a man by the name of Hughes. That McKnight said to John J. Harrigan that he came in with Mr. Hughes to select a casket, and wanted said Hughes to see the casket he should select. That McKnight pointed out a particular casket, and said he wanted that one, and none else. That Mr. John J. Harrigan said that was pretty expensive, to which McKnight replied that he did not care; that he wished that one; and Mr. Hughes remarked that it was none too good for his old bones. That Mr. John J. Harrigan then said that it was all right; that he would keep it for him, and he should be laid out in it. McKnight then said: "All right. That is a bargain."

That subsequently he saw McKnight after his death, and noticed he was laid out in the casket he had selected during his lifetime, and was buried in it. There was also submitted upon this motion the affidavit of Henry Kelly, in which he stated that at the time of the maturity of the note given to Anthony McKnight by William Kelly, and indorsed by him, to wit, July 1, 1890, he was insolvent and unable to pay said note, as was also the maker of said note; that the judgments against William Kelly and Henry Kelly, which were docketed and entered after the maturity of this note, were not paid by him; that since 1891 he has been mainly out of the state, and prior to December, 1900, he was continuously out of the state for about a year. The moving papers also develop the fact that the acting executor was unaware of the matters and things set forth in the affidavit of Henry Kelly until the same was taken on the 8th day of March, 1901.

In determining cases of this character the courts have adopted certain salutary rules, which are set forth in the elementary works, and also in reported decisions. In 3 Grah. & W. New Trials, 1016, the learned authors give the following definition of newly-discovered evidence:

"By 'newly-discovered evidence' is meant proof of some new and material fact in the case, which has come to light since the verdict."

And further, at page 1020 of the same volume, in giving a further elucidation of the rule, they stated the same as follows:

"If a case has gone against a party simply because a portion of his evidence, without any fault of his, has remained latent, so that the truth has been obscured, what is more evident than that the truth ought to be vindicated by a second trial? It would be wrong to permit, under such circumstances, the successful party to enjoy his advantage, obtained not upon his own strength, but upon the weakness of his opponent, as to permit the latter to suffer without redress."

The grounds which move the court in such cases are distinctly stated in a recent case, as follows:

"In order to make out a case for a new trial upon the ground of newly-discovered evidence, it must appear: First, that it has been discovered since the trial, and could not, with reasonable diligence, have been obtained upon the trial; second, that it is material to an issue involving the merits; third, is not cumulative; and, fourth, that there is a reasonable certainty that, if offered before, it would have changed the result." Roberts v. Bank (Sup.) 14 N. Y. Supp. 432.

The same rules are further set forth in Glassford v. Lewis, 82 Hun, 46, 31 N. Y. Supp. 162, where the court said:

"Motions to set aside verdicts as contrary to the evidence, as well as motions for a new trial upon the ground of newly-discovered evidence, are not governed by any well-defined rules, but depend in a great degree upon the peculiar circumstances of each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done; the court having in view solely the attainment of that end," and they should be liberally granted in the furtherance of justice. Also: "Upon a motion for a new trial on the ground of newly-discovered evidence, it must appear that the evidence was discovered since the trial, that it could not have been obtained upon the former trial by the exercise of reasonable diligence, * * * that it is not merely cumulative, and that its character is such that it would probably have changed the result. When these facts appear, and the court is satis-

fied that the ends of justice will be promoted by allowing the moving party an opportunity to present the newly-discovered evidence, the motion will be granted." Also, to the same effect: "Motions for new trials are addressed to the discretion of the court, whether based upon the weight of evidence, surprise, or newly-discovered evidence, or the fact that the party has been deprived of his evidence by accident, or other like grounds; and in modern practice they are liberally granted in the furtherance of justice."

In People v. Baker, 27 App. Div. 597, 50 N. Y. Supp. 771,—the same being an appeal from an order granting a new trial,—the court, in delivering the opinion, said:

"The learned trial judge tried the case fairly and impartially. He knew the witnesses, and he was in a better situation to judge than we can be. from the surroundings and atmosphere of the trial, of the strength and bona fides of the motion for a new trial. The granting or refusing of it was very largely in his discretion, and we cannot say that that discretion was abused; and in this case, as in all others, the motion for a new trial upon the ground of newly-discovered evidence is not governed by any well-defined rule, but is addressed to the sound discretion of the court, and whether it should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end."

In defining what constitutes reasonable diligence, as applied to motions of this character, the court held in Bonynge v. Waterbury, 12 Hun, 534, as follows:

"The law exacts from parties and their counsel in the trial of an action only reasonable diligence, and when that has been observed, and, notwithstanding its exercise, material evidence, not of a cumulative character, which would probably change the result, has eluded their discovery, and is subsequently discovered, a proper case is presented for a new trial."

Tested by these rules, I think this motion should be granted. The testimony certainly is material, and is not cumulative, and the moving parties have exercised reasonable diligence in obtaining the same, taking into consideration the fact that the administrator, who had personal knowledge of these matters, and could give explanations with reference to them, is dead, and that the facts with reference to which the testimony relates, if proven upon the trial, would probably affect the result heretofore reached. If the Kellys were insolvent, as a matter of fact, then certainly the estate of John J. Harrigan should not be charged with the amount of this note. In defining "active vigilance" on the part of personal representatives of a deceased, Judge Peckham, in O'Connor v. Gifford, 117 N. Y., at page 279, 22 N. E. 1037, lays down the law as follows:

"'Active vigilance' is a relative term, and what it is depends upon the facts appearing in each case. * * * A debt being proved, the presumption is that it is collectible, as solvency, and not the contrary, is to be presumed. But when the onus, being shifted to the executor, is met by proof on his part of the absolute, irretrievable, and hopeless insolvency of the debtor, does any rule of active vigilance demand the institution of legal proceedings by the executor against such insolvent debtor? * * * All the facts being in, the question arising for determination is whether the conduct of the executor has been guided by good faith, reasonable judgment, and an intention to fairly and fully discharge his duty. If so, it cannot be that he should still be held liable for a devastavit."

The motion of the petitioner is therefore granted, opening the decree heretofore entered herein, and providing for a new hearing upon the two issues mentioned and set forth in this petition, upon condition that the costs, which are hereby fixed at $70, be paid to

the respondent upon this motion within the period of five days from date hereof. If not paid within said period of time, then this motion is denied. Decreed accordingly.