## PEOPLE v. BAKER.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1898.)

1. CRIMINAL LAW—ACCOMPLICES—CORROBORATION.

As against one charged with larceny of grain, two accomplices testified that, together with accused, they took the grain, carried it to a wagon, and hauled it to his barn; that accused lost his hat; and that afterwards he gave one of them money to go to Canada, and paid the other to keep quiet. Accused admitted paying one of them money, claiming it to be for wages. After the larceny, scattered grain was traced to the land of accused, wagon tracks from there led to his barn, and his hat was found near the place where the grain was taken. *Held*, that the evidence of the accomplices was sufficiently corroborated.

2. SAME—EVIDENCE—MOTION TO STRIKE.

The court, on its own motion, ordered irresponsive testimony to be stricken, whereupon counsel protested that the error was not thereby cured. *Held* not ground for reversal where the court was not requested to instruct the jury to disregard the testimony.

3. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

Accused was not entitled to a new trial because of newly-discovered evidence, where the witnesses who would have testified to the facts were present at the trial.

4. SAME—DISCRETION OF TRIAL COURT.

Where the trial court overrules a motion for new trial requested on the ground of newly-discovered evidence, the ruling will not be reversed if substantial justice has been done.

Appeal from Niagara county court.

Arthur B. Baker was convicted of larceny, and he appeals from the judgment and an order denying a new trial. Affirmed.

Among the grounds of such motion was, as the defendant claimed, the existence of newly-discovered evidence. The defendant was indicted, in conjunction with Charles O'Connell and Edward Blimm, of the crime of burglary in the third degree and grand larceny in the second degree, committed on or about the 13th day of November, 1896, at the town of Cambria, in the county of Niagara, by breaking and entering a barn of Calvin W. Thompson, with intent to commit larceny, and stealing and carrying away a quantity of oats, of a value exceeding $25, and being the property of the said Thompson. Baker elected to take a separate trial, and was tried for these offenses on the 2d, 3d, and 4th of June, 1897. He was convicted of the offense charged, and his counsel moved for a new trial, upon affidavits and upon the proceedings of the trial, which motion was denied; and the court sentenced the defendant to be confined in Auburn State's Prison for the period of one year and seven months.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

D. E. Brong, for appellant.
A. T. Hopkins, Dist. Atty., for the People.

WARD, J. The complainant, Thompson, and the defendant Baker, at the time of the commission of the offense charged upon the defendant, were farmers in the town of Cambria, Niagara county, occupying adjoining premises, and their houses being about 150 rods apart. The complainant's and the defendant's orchards upon their respective farms were separated by a line fence. In the forepart of the month of November, 1896, Thompson's barn was entered in the night, his granary broken open, and about 180 bushels of oats

taken therefrom, of the value of from 20 to 21 cents per bushel.
The principal witnesses for the people were Christopher Gershmeir
and Edward F. Blimm, who were employed at the time of the trans-
action as laborers by the defendant, and who were living at his house.
They testified, in effect, that on the night of the burglary, at the in-
stigation of the defendant, they, in company with the defendant and
O'Connell, went to Thompson's barn, broke into the granary, put
the oats into bags that had been obtained at defendant's, carried the
bags through Thompson's orchard to the line fence between the two
orchards, put the bags over the fence, put them in a wagon, and
carried them to the defendant's barn; that there were two wagon
loads; that they commenced this work in the evening, after sup-
per, and finished it at 4 o'clock in the morning; that, during the
transaction, the defendant said he had lost his hat; they looked for
it, but did not find it; that the defendant had several teams engaged
in his business, and, shortly before the burglary, the defendant had
used up his oats in the barn, and had none. Gershmeir testified that,
after the burglary, he remained at defendant's until about the 15th
of November, 1896, and then went away, and in February he told of
this transaction tö one Lukeman; that afterwards he was subpœnaed
to go before the grand jury of Niagara county; that he, about that
time, saw the defendant at Sanborn, in Niagara county; and that
he went with the defendant and O'Connell to Niagara Falls, and they
directed him to go to Canada; and that the defendant gave him 50
cents, and he went to Canada, and from there to Detroit, at which
point he was arrested and brought back. The defendant testified
upon the trial in his own behalf, and in relation to this transaction
said that he did go to the Falls with O'Connell and Gershmeir; that
at that time he knew that Gershmeir had been subpœnaed that day
to appear before the grand jury, but he denied advising him to go
to Canada, or of furnishing him any money. Blimm testified that,
on the same morning that he was arrested on account of this bur-
glary, the defendant came to him in Buffalo, and informed him that
he had been arrested and given bail, and the defendant wanted
Blimm to go to Pittsburg. Blimm replied that he did not think
it was necessary to leave the city, whereupon defendant gave him
five dollars, and told him to keep shady in the city. The defendant
testified that he did go to Buffalo, and saw Blimm at his residence,
and paid him five dollars, but claimed that he paid it upon his wages,
and did not advise him to go to Pittsburg; but defendant admitted
that this visit to Buffalo was shortly after he had been arrested for
the burglary and larceny. Frances Blimm, the mother of the wit-
ness Blimm, testified that Baker, on this occasion, came to her house,
in Buffalo, the day that her son was arrested, and in the morning,
quite early, and that they talked low together, and she did not hear
what was said. Shortly after the burglary, a hat was found near the
scene of the affair, and several witnesses, who were not accomplices
of the defendant, gave evidence tending to show that it was the de-
fendant's hat. Two or three other disinterested witnesses testified
that, soon after the burglary, they examined the premises, and traced
a scattering of oats from the barn of Thompson to the line fence be-

tween his and defendant's premises, through the orchard; and a small quantity of oats was found near the fence, on the defendant's side of the line, and the indications were that persons had gotten over it, and wagon tracks were traced from this line in the orchard towards defendant's barn.

The principal point urged by the appellant's counsel upon this appeal is that there was not a sufficient corroboration of the two accomplices of the defendant in the crimes to justify the trial court in submitting the case to the jury. We are of the opinion that the confessions of the defendant as to the circumstances under which he saw these accomplices, as we have detailed, together with the evidence as to the hat and as to the tracing of the oats and wagon, formed sufficient evidence to justify the trial court in submitting this question to the jury. The rule in such cases is clearly stated in People v. Elliott, 106 N. Y., at page 292, 12 N. E., at page 603, where Judge Earl, after commenting upon certain circumstances developed in that case, says:

"Each circumstance taken by itself is quite inconclusive, but when considered together they certainly furnish some corroborative evidence. It is not necessary that the corroborative evidence of itself should be sufficient to show the commission of the crime, or to connect the defendant with it. It is sufficient if it tends to connect the defendant with the commission of the crime. Nor need the corroborative evidence be wholly inconsistent with the theory of the defendant's innocence. The court, before it should submit the case to the jury, should be satisfied that there is some corroborative evidence fairly tending to connect the defendant with the commission of the crime; and, when there is, then it is for the jury to determine whether the corroboration is sufficient to satisfy them of the defendant's guilt. As we said in People v. Everhardt, 104 N. Y. 591, 11 N. E. 621: 'The law is complied with when there is some evidence fairly tending to connect the defendant with the commission of the crime, so that the conviction will not rest entirely upon the evidence of the accomplice.'" People v. Terwilliger (Sup.) 26 N. Y. Supp. 677.

Numerous exceptions were taken upon the trial by the defendant upon the court's rulings as to the admissibility of evidence, none of which impress us as containing reversible error; and we deem it unnecessary to consider but one objection to evidence, which is most earnestly urged by the appellant's counsel, though there was no exception taken to the ruling. Upon the cross-examination of Mr. Thompson, the complainant, he was asked if he had any ill feeling towards the defendant, and if he had expressed it. The witness said that he had had some deal with the defendant, and that defendant owed him something; that he had mistrusted, and still mistrusted, that Baker was the man that took his oats; that he had never had any ill feeling towards Baker until a little while,—"until I had my opinion of the family." On the redirect examination, he was asked by the district attorney if he had had claims against the defendant at different times, and the witness answered:

"I never had much feeling about the transaction. There was something about a note. I can tell you the circumstances. Q. Well, what was it? (This was objected to by defendant's counsel, as incompetent.) The Court: You went into it; go on. (Overruled.) A. Well, I had two or three notes against both at different times. I had a note against him, and his mother signed it. And she told me she never put her name to it, and never authorized him to do it. * * * The Court: The evidence, so far as what Mrs. Baker said, may be stricken out.

Mr. Brong: I wish to have my protest noted in behalf of the defendant,—that the striking of it out does not cure the error. The Court: Well, the court will order it stricken out."

The statement of the witness in regard to what the mother had said was not strictly responsive to the question put to the witness; and the defendant's counsel, to have raised the question, should have moved the court to have the evidence stricken out; and as he did not do so, and when the court of his own motion ordered it stricken out, the counsel for the defendant answered in the language stated. Had the counsel desired the striking out of this evidence to have been more emphatic, or had he desired the court, in addition to striking out the evidence, to charge the jury to disregard it, he should have made that request to the court; and, had the court refused that request, then the proper exception to that refusal might have brought up the question of error that is raised in the appellant's points in regard to this matter.

Upon the motion for a new trial, the counsel for the defendant read several affidavits to the effect that during the evening of the 5th of November, 1896, and up to about 1 o'clock on the morning of the 6th, the defendant was at a little village called Pekin, about two miles from the defendant's residence, spending the most of his time at an hotel kept by one Richard McCarthy; that the defendant and his friends who made the affidavits were having a jollification over the result of the election which had occurred on the 3d day of November, two days before. The affiants generally fix the time as being two days after this election, and that was the reason why they remembered the date. One of the affiants, Joseph H. Parker, was the father-in-law of the defendant, who lived at Pekin, and kept a store there; and he states that on that evening the defendant purchased an article at the store, which was charged on Parker's books to the defendant; that at that time the defendant had not married his daughter, but had called to see her in the evening. The defendant claims that a new trial should be granted upon these affidavits, because he was misled as to the time when the people charged the commission of the burglary, the indictment stating that it was on or about the 13th of November, and that, until it was disclosed upon the trial by the evidence of the two accomplices that the burglary was committed on the night of the 5th and the morning of the 6th of November, he had no notice that that was the time that the offense was charged as having been committed, and therefore was not prepared to show his alibi at that time. The accomplices did state that the burglary was committed on Thursday, of the first week in November; but they gave no facts showing why they should have remembered the date, as they were at this house for several days before and after the 5th of November. They state that it took the four men from some time after supper until 4 o'clock the next morning to go that short distance, bag 180 bushels of oats, and take them to the defendant's barn. Assuming that the defendant was at Pekin on the night in question, and returned to his home about 1 o'clock the next morning, he might have had ample time, with his three associates, to burglarize the barn, and take the oats, before 4

o'clock the next morning. Therefore the evidence as to the dates, and as to what might have occurred on the date fixed by these witnesses, is quite unsatisfactory, and greatly impairs the assumed alibi. It is not likely that these men went upon the premises of Thompson before his family had retired, and it is more than probable that the burglary took place late in the night.

As we have said, the trial lasted three days. The father-in-law attended the trial, as did Richard McCarthy, the hotel keeper. Immediately upon the people fixing the 5th of November as the time, it is remarkable that neither the defendant nor these two affiants, the father-in-law and McCarthy, should have remembered the jollification on that night, or recalled any of the circumstances attending the alibi, which are embraced in these affidavits. They had two days before the expiration of the trial to find out where the defendant was that night, and call the witnesses to the transaction.

The same rule as to civil cases in regard to new trials upon the ground of newly-discovered evidence prevails in criminal cases, and that rule is well stated by Van Brunt, J., in Dillingham v. Flack (Sup.) 17 N. Y. Supp. 868:

"The following principles are settled in regard to granting new trials on the ground of newly-discovered evidence: The testimony upon which the motion is based must have been discovered since the former trial. It must have been such as could not have been obtained with reasonable care before. It must be material to the issue. It must go to the merits of the case, and not to impeach the character of former witnesses. The facts must be strong, and the party averring them free from laches. It must not be cumulative."

The defendant himself was a very prominent actor at this jollification, according to his affidavit; and, if true, the circumstance must have been impressed upon his memory, so that he could have recalled it with a slight effort. There was laches in this regard. The defendant should not be permitted to lie by or await the result of a trial, and, when the result is adverse to him, claim a new trial for the want of evidence that with reasonable diligence he could have produced upon the trial. The learned trial judge tried the case fairly and impartially. He knew the witnesses, and he was in a better situation to judge than we can be, from the surroundings and atmosphere of the trial, of the strength and bona fides of the motion for a new trial. The granting or refusing of it was very largely in his discretion, and we cannot say that that discretion was abused; and in this case, as in all others, the motion for a new trial upon the ground of newly-discovered evidence is not governed by any well-defined rule, but is addressed to the sound discretion of the court; and whether it should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end. Barrett v. Railroad Co., 45 N. Y. 632. We have reached the conclusion that, in denying the motion for a new trial, the substantial rights of the defendant were not violated, and that the affidavits of newly-discovered evidence do not present a case for a new trial.

The judgment and order appealed from should be affirmed. All concur.