### JOHN RYAL v. STATE.

No. A-2801—Opinion Filed March 10, 1919.

Rehearing Denied Aug. 2, 1919.

(182 Pac. 253.)

1. **CONTINUANCE—Absent Witness—Sufficiency of Application.** Where an absent witness has been summoned and it is not averred in the affidavit upon which the motion for a continuance is predicated, or shown by evidence, that such witness is not absent by consent or procurement of the defendant, and that the cause of the absence of said witness is unknown, and no attachment is asked for said witness, and it is averred in said affidavit that the whereabouts of said witness is unknown, such application is insufficient upon its face and properly overruled.

2. **WITNESSES—Interest—Offer to Purchase Property of Prosecuting Witness.** The state introduced evidence tending to show that an effort was made by a witness for the defendant, and without the defendant's instance, to purchase at an excessive value all the property of the prosecuting witness, with the condition that such witness leave the state and stay away two years and not appear against the defendant, and the party making such offer appeared and testified for the defendant, denying that he had made any such statements or offer. Held, that said offer to purchase said property may be shown for the purpose of showing the interest of such witness for the defendant, if the court limits such evidence solely to such interest.

3. **EVIDENCE—Admissibility—Attempt to Prevent Testimony of State's Witness.** An effort of a defendant to cause a witness for the state not to appear against him is a circumstance tending

to show the guilt of the defendant, and the facts of such effort may be properly admitted on his trial.

4   TRIAL—Testimony of Accomplice—Question for Jury. Unless the court is able to instruct the jury as a matter of law that a witness is an accomplice, whether or not the witness is an accomplice is a question of fact for the jury to determine.

5.   APPEAL AND ERROR—Review—Accomplice Testimony—Conviction. Where evidence is submitted tending to show that a witness for the state is an accomplice in the crime for which the defendant is being tried and also evidence to corroborate such evidence of such accomplice, and these questions are properly submitted to the jury, a verdict of conviction will not be disturbed upon the ground that the conviction is in violation of section 5884, Revised Laws 1910.

6.   LARCENY—Taking of Live Stock—Instructions. Instructions given by the court and excepted to by the defendant, considered in connection with the entire instructions of the court, and held free from error.

7.   LARCENY—Live Stock—Conviction. The evidence in this case carefully examined, and held, though in conflict, sufficient to reasonably support the verdict of the jury.

8   NEW TRIAL—Newly Discovered Evidence—Effect on Result—Discretion of Trial Court—Case Overruled. A motion was made for a new trial upon the ground of newly discovered evidence, the motion being predicated upon an affidavit of a witness for the state at the trial that he (witness) committed the offense for which the defendant was convicted, and that defendant had no part in the commission of the offense, together with affidavits as to the good character of the defendant. Held: (1) That such showing does not entitle the defendant as a matter of right to a new trial, but calls into exercise the sound discretion of the court, and such motion should be overruled unless the trial court believes that such recantation is probably true and that another trial would probably result in the acquittal of the defendant. (2)   The holding in the second paragraph of the syllabus in N. D. Chappell v. State, 6 Okla. Cr. 398, 119 Pac. 139, is hereby expressly disapproved, and the same modified to conform to the rule of law herein announced.

*Appeal from District Court, McIntosh County;*
*R. W. Higgins, Judge.*

John Ryal was convicted of larceny of live stock, and appeals. Affirmed.

*Presley B. Cole,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, John Ryal, hereinafter referred to as "defendant," was, together with Nick Barrow and Sam Guy, jointly informed against for the offense of larceny of live stock.   The prosecution was dismissed as to Nick Barrow and Sam Guy, and upon his trial defendant was convicted, and his punishment fixed at six years' imprisonment in the penitentiary.

To reverse the judgment rendered, the defendant prosecutes this appeal.

The information contains two counts, and the state elected to stand upon the first count, which count, omitting caption and signature, is as follows:

"That John Ryal, Nick Barrow and Sam Guy, on the day and year aforesaid, in the county and state aforesaid, acting together, did unlawfully, wilfully, wrongfully, stealthily and feloniously, take, steal and carry away, one bay mare about three years old, with white spot on forehead, about 14½ hands high, of the personal property of one J. E. Watson, without the consent and against the will of him the said J. E. Watson, the true owner thereof, and with the unlawful, wrongful and felonious intent then and there on the part of them, the said John Ryal, Nick Barrow and Sam Guy, to deprive the said J. E. Watson of the said property, live stock and horse, and to convert the same to the use and benefit of them the said John Ryal, Nick Barrow and Sam Guy, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state."

The defendant moved for a continuance on the ground of the absence of Myrtle Gage and Henry Turpin, witnesses for the defendant.   The affidavit which is the basis for the motion for a continuance, and in support of which

no evidence is offered, avers: "That Myrtle Gage resides near Chanute, Okla., but whose whereabouts is now unknown, and Henry Turpin, whose residence is not stated, and whose whereabouts is now totally unknown," have each been legally subpoenaed in this case as witnesses for the defendant, and for some reason unknown to the defendant are absent, and that if present Myrtle Gage would testify that early in September, just after the theft was committed, Sam Guy and Nick Barrow brought some horses and put them in their pasture; that she was informed at that time that the horses put in the pasture were the horses of Sam Guy and that he would pay for their pasturage; and that Henry Turpin, if present, would testify that he worked for John Ryal at the same time that Sam Guy, one of the defendants, worked for him; that he is well acquainted with Sam Guy, and that Sam Guy was well acquainted with and knew all of John Ryal's horses; that, at the time said witness was working for him, the defendant Sam Guy tried to induce the said Henry Turpin to aid or assist him in stealing horses or cattle, and that if they were intercepted they would turn state's evidence on John Ryal and go free, and this affiant believes the same to be true.

The said affidavit further avers that the facts which the defendant expects to prove by said absent witnesses cannot be proved by other witnesses. There is no allegation in said affidavit that the said witnesses are not absent by the procurement or consent of the defendant, or that the affiant believes that the evidence which Myrtle Gage would give is true.

The court overruled the motion for a continuance, and the defendant excepted.

There is evidence that a bay mare belonging to J. E. Watson and another bay mare and a light bay horse belonging to J. Ardica were in a pasture near the home of the defendant in McIntosh county; that the said animals were missed and unsuccessfully hunted by their owners; that, shortly after said animals were missed, they were in the lot of defendant near his home; and that the said animals were by direction of the defendant started at night and driven to the home of Mr. Barrow, in Washita county, Okla., the father-in-law of the defendant, by Sam Guy and others; that the defendant, in advance of the starting of said drive of said horses, went from his home to Washita county, Okla., and met the said horses about two miles from the home of the said Barrow, and by his direction they were put in the pasture of said Barrow; and that the next day, by direction of defendant, a part of said animals, including the said mare belonging to Watson and the mare and horse belonging to Ardica, were taken from the home of the father-in-law of the defendant to the home of defendant's brother-in-law in Custer county; and that the sheriff of McIntosh county, accompanied by Watson, there found the animals belonging to Watson and Ardica, and Watson got said animals and took them back to McIntosh county; that the sheriff of McIntosh county, two or three weeks after said animals were driven from McIntosh county, saw the defendant in the jail of Washita county, where he had been incarcerated by request of said sheriff, and was informed by the defendant "that he did not know anything about said animals belonging to Watson and Ardica, that he had got the fellows to bring his horses through, but knew nothing about their stealing any others," and directed the sheriff to go up to old man Barrows' and see what horses they

brought, which direction was given after said averred stolen stock had been removed from old man Barrows', in Washita county, to Custer county to defendant's brother-in-law's, by direction of the defendant.

The undenied evidence is that Sam Guy helped to drive the horses from defendant's lot in McIntosh county to Washita county.

Dick Ransom testified:

That he was a jail guard at the jail in McIntosh county, and that Sam Guy, one of the defendants charged in the information in this case, was confined in said jail; that he knew the defendant; that the defendant offered to pay witness $500, which he said he would get from his mother, if Ransom would turn Sam Guy out and run him off, saying:

"Turn him out. Get him out, and tell him to come to my house and I will give him some money to get away with, and, if he don't get away, I will kill the son of a bitch."

There was undenied evidence that the said mare belonging to the said Watson and the said mare and horse belonging to the said Ardica were not taken by consent of said owners.

The defendant testified in his own behalf and denied all the material evidence of the state tending to show that he was guilty of the larceny of the said live stock with which he was charged, and offered evidence of several witnesses tending to show that the larceny of said live stock was done by Sam Guy, and that Sam Guy claimed them as his own, and that the alleged stolen horses were added to the bunch of his horses by the said Guy after they had started from his (defendant's) lot, and that the said al-

leged stolen live stock was not in the lot of defendant when defendant directed the same to be driven to Washita county.

There was also evidence tending to show that the defendant did not have the conversation with Ransom as testified by said Ransom. The defendant testified "that, if he had such conversation with Ransom, he did not remember it," but admitted that he was at the jail and talked to Dick Ransom and asked him why he did not turn the negro out. The defendant admitted that he had directed Nick Barrow and Vance Thomasberry, but no one else, to drive his horses from McIntosh county to Washita county, and the uncontradicted evidence is that at that time the said Nick Barrow was 15 years old, and Vance Thomasberry was 11 years old.

E. H. Taft having testified as a witness for the defendant, Watson, the owner of one of the horses alleged to have been stolen, was recalled, and testified that said Taft and two others offered to buy his (Watson's) property and to pay $1,000 for the same, if Watson would sign a bill of sale and leave the country and not appear to prosecute John Ryal, and nothing was said about John Ryal or that he was to pay the said $1,000. The court, upon admitting said evidence against the objection and exception of the defendant, instructed the jury:

"That said evidence is considered for one purpose only, and that is whether or not the witness Taft has any interest in the prosecution or defense of this action, and is to be considered by you only for that purpose."

Among other instructions, the court gave the following, to each of which the defendant excepted:

"No. 7. If you believe from the evidence in this case beyond a reasonable doubt that on or about the date charged

in the information, or at any time within three years next prior to the date of the filing of the information in this cause, the defendant, John Ryal, either alone, or acting in conjunction with or aiding and abetting one Nick Barrow and one Sam Guy, or either of them, unlawfully, wilfully, and feloniously, by stealth, took, stole, and carried away the certain bay mare, described in the first count of the information, with the intent to convert the same to his own use, and to deprive the true owner, J. E. Watson, of the use and possession thereof, you will find the defendant guilty.

"But, on the other hand, if you entertain a reasonable doubt as to any of the material allegations of the information as above explained as necessary to be proved, you must give the defendant the benefit of the doubt and acquit him.

"No. 8. You are instructed that an 'accomplice' is a person involved either directly or indirectly in the commission of a crime. To render a person an accomplice he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in such offense. You are further instructed that a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant, John Ryal, with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of an offense, or the circumstances thereof; but you are further instructed that it is not necessary that the corroborating evidence go so far as to establish by itself and without the aid of the testimony of the accomplice that the defendant committed the crime as charged. And if there be sufficient corroborating evidence outside of that given by the accomplice, which, when considered together with that of the testimony of such accomplice, will satisfy the minds of the jury of the guilt of the defendant, John Ryal, beyond a reasonable doubt, then the guilt of the defendant, John Ryal, is sufficiently established."

On the 2d day of February, 1916, the defendant filed a motion for a new trial upon the following grounds:

"(1) That the court erred in overruling the defendant's motion for a continuance.

"(2) That the court erred in allowing the testimony of Dick Ransom, witness for the state, to go to jury, which was duly excepted to by the defendant.

"(3) That the court admitted over the objection of defendant transcript of the committing justice of the peace to be introduced as testimony.

"(4) That the court erred in overruling various and sundry objections of defendant to the introduction of testimony to which exceptions were duly saved at the time by defendant.

"(5) That the court erred in giving instructions Nos. 7 and 8, to which exceptions were duly saved by the defendant.

"(6) That the verdict is not sustained by sufficient evidence and is contrary to law."

—which motion was overruled, and defendant excepted.

On July 5, 1915, the defendant filed a motion to set aside the judgment rendered in this case on the ground of newly discovered testimony, and in support thereof submitted many affidavits showing admissions by Sam Guy of several persons that he and not the defendant committed the larceny of which the defendant was convicted; that Sam Guy was a man of bad character, "a thief, a bootlegger, and a preacher"; and that the defendant was a man of fine character as a citizen and an honest man, and many of the affiants were surprised at his conviction.

In addition to said several affidavits, the defendant presented the following affidavit made by Sam Guy, caption omitted:

"Affiant, Sam Guy, being duly sworn deposes and says: My name is Sam Guy. I reside near the defendant, John Ryal, south of Henryetta. I am the same Sam Guy, the colored man that testified for the state against John Ryal at Eufaula at the trial in the above-entitled cause in which John Ryal was convicted of larceny and given six years in the state penitentiary. The defendant, John Ryal, Nick Barrow and myself were all arrested, charged with stealing the horses that were taken from John Ryal's home near Henryetta to Barrow's and Gages' pasture near Canute, Oklahoma. I was promised that if I turned state's evidence against John Ryal that the case against me would be dismissed and I would never be prosecuted for it. I will further state that John Ryal had nothing to do with the taking, stealing or carrying away any of the horses that were stolen, and I alone am responsible for same, and John Ryal did not know that they were to be taken to Canute and did not see them after they arrived and neither did we tell him about it. I swore at the trial at Eufaula to save myself and that was the only reason that I swore as I did against John Ryal, and further affiant saith not.

"(Signed) SAM GUY.

"Subscribed and sworn to before me this 25th day of March, 1916.

(Seal)                    GEO. W. BURROUGHS,
        "Notary Public, Okmulgee County, Okla.
"My commission expires Feb. 12, 1917."

The state did not offer any evidence in contradiction of the affidavits offered by the defendant.

The court overruled the motion for a new trial on account of newly discovered evidence, and the defendant excepted.

It is first insisted that the court committed prejudicial error in overruling the motion for a continuance, and with this contention we cannot agree. It is not averred

in the affidavit upon which the said motion is predicated that the affiant believes that the testimony which Myrtle Gage would give is true, and it avers that the whereabouts of Henry Turpin is totally unknown, and the necessary averment that the said witnesses are not absent by the procurement or consent of the defendant is not made, and hence the affidavit does not comply with the statute governing continuances.

"The affidavit should state that the witness is not absent by procurement or consent of the defendant." *Musgraves v. State*, 3 Okla. Cr. 423, 106 Pac. 545.

It is averred in the affidavit for a continuance that the absent witnesses had been summoned, but it is not shown therein why they were absent, nor that an attachment was asked for said absent witnesses, and hence it is not shown that the defendant had exhausted all of his legal remedies to secure the presence of said witnesses, and therefore the application was insufficient upon its face.

"When the witnesses have been subpoenaed and there is no showing why they were absent, defendant should have an attachment issued for them. And if he does not ask for an attachment, he is not entitled to a continuance." *Somie McCarter v. State*, 14 Okla. Cr. 305, 170 Pac. 712; *Rose v. State*, 8 Okla. Cr. 294, 127 Pac. 873.

"Application for a continuance should be most strongly construed against the pleader." *Musgraves v. State, supra.*

It is the unbroken line of decision of this court that a motion for a continuance on account of absent witnesses is addressed to the sound discretion of the court, and, unless an abuse of this discretion appears, a conviction will not be reversed on account of the denial of such motion.

We are unable to see that the court in overruling the motion for a continuance in this case abused its sound discretion.

The defendant also seriously complains that the court committed reversible error in admitting the evidence in regard to a proposed purchase of Watson's property, and to have him leave the country and not prosecute the defendant, for the reason that the defendant was not shown to have actuated or to have been connected with the transaction. The evidence shows that the said transaction, if it did occur, was by Taft, a witness for the defendant, and, as the court instructed the jury that the only purpose of said evidence was to show that Taft was interested in the case and that they must consider said evidence only for such purpose, we are not able to see that the said complaint of the defendant is well grounded. It does not require the citation of authorities to support the rule that it may be shown that a witness is interested in the case in which he testifies.

We have carefully considered the seventh and eighth paragraphs of the instructions given the jury by the court, and are of the opinion that each of said paragraphs states the law.

The defendant further complains that the court committed prejudicial error in not sustaining his motion to strike the evidence of Dick Ransom, which the defendant indirectly admits to be true, by testifying "that, if he had such conversation with Ransom, he does not remember it." Certainly said contention, based upon the ground that such conversation, if it occurred, "was after the commission of the offense," is without merit. The evidence of Ransom shows an effort on the part of the defendant to

get an important witness out of the way, and this is a cir-.
cumstance tending to show an indirect admission on the
part of the defendant of guilt. Certainly it is untenable
to say that the effort of a defendant to suppress evidence
against him, if not made until some time after the com-
mission of the crime, is inadmissible. We are of the opin-
ion that the court did not err in admitting Ransom's evi-
dence.

The defendant insists that there is no evidence to in
any manner connect him with the offense charged, except
that of accomplices, and that the evidence of such accom-
plices is not corroborated, and hence the verdict rendered
against him is in violation of the law which prohibits a
conviction upon the uncorroborated evidence of an accom-
plice.

The jury in order to have reached the verdict ren-
dered must have found, either that the witnesses for the
state were not accomplices of the defendant, or that, if
accomplices, the evidence of such witnesses was corrobo-
rated, and we are of the opinion that under the evidence
the jury were warranted in finding that the said witnesses
were not accomplices. If, however, the said witnesses were
accomplices, which we do not hold, we think the evidence
fully justified the jury in finding, from the evidence of the
sheriff of McIntosh county, the evidence of an effort of
defendant to prevent one of the most important witnesses
against him from appearing against him, thus indirectly
tending to admit guilt, and from parts of the defendant's
evidence that the evidence of the state's witnesses was
corroborated, and hence it is immaterial whether the jury
determined that the state's witnesses were not accomplices,
or that, if accomplices, their testimony was sufficiently cor-
roborated, as in either event a legal conviction might fol-

low. These were questions properly within the province of the jury, and there being evidence to reasonably support either theory that the jury may have adopted, and the court having properly instructed the jury, the contention of the defendant that his conviction has been brought about solely by the evidence of accomplices and in violation of section 5884, Rev. Laws 1910, is not well taken.

That a witness was jointly informed against with the defendant for an offense does not make him an accomplice. The proof alone must be looked to, to determine whether or not the witness was an accomplice of the defendant, and this is a question for the jury.

There are several other contentions of the defendant as to the rejection or admission of evidence which, after proper consideration, we deem unnecessary to discuss; for if thereby technical errors were committed, which we do not hold, such errors are harmless and must be disregarded. Section 6005, Rev. Laws 1910.

We have with great care fully considered the evidence in this case, and, while the evidence is in conflict, we are of the opinion that the evidence is sufficient to reasonably support the verdict and judgment rendered.

In *Dugan Dunbar v. State,* 15 Okla. Cr. 513, 178 Pac. 699, it is held:

"Where the evidence is conflicting, but the facts and circumstances in the evidence are sufficient to authorize the jury reasonably to infer that defendant is guilty of the crime charged, the judgment will not be reversed because of insufficient evidence."

The ruling in *Dugan Dunbar v. State,* supra, finds support in an unbroken line of decisions of this court.

For the reasons hereinbefore stated, and upon the authorities cited, we are of the opinion that the court did not err in overruling the motion for a new trial.

On the 5th day of July, 1916, the defendant filed a motion to set aside the judgment rendered against him and grant him a new trial upon the grounds of newly discovered evidence, which the defendant did not know prior to his trial, as follows:

"That Sam Guy had, since the conviction of the defendant, stated to different persons that he (Sam Guy) committed the offense of which the defendant was convicted, and that the defendant was not connected with and had no knowledge of the said crime; that Nick Barrow, who was jointly charged with the defendant in said case, prior to the trial stated that John Ryal had nothing to do with the larceny of said horses; that Sam Guy offered to Walter Payne, about the 1st day of September, 1915, to trade a span of mares for a span of mules owned by Payne, when in fact Sam Guy owned no live stock of any kind; that Oscar Watson, Taylor Taylor, Alva Smith, B. B. Hendon, Chas. King, A. A. Blum, S. T. Jones and W. P. Jones have voluntarily expressed themselves as being surprised at the conviction of the defendant, and would have testified to the good character of the defendant, that said defendant had no idea that said witnesses were competent and material evidence for him or that they would testify to his good character before the trial, and had no means of ascertaining the same; that said above foregoing witnesses have assured the defendant that if a new trial is granted in this case that they and each of said witnesses will attend said trial and testify as stated in the affidavits hereto attached and marked Exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, and Q."

The original case-made was made a part of said motion.

On July 24, 1916, the defendant by leave of court filed three additional affidavits in support of his said motion to set aside judgment and grant a new trial on the ground of newly discovered evidence, and in two of said affidavits it is respectively alleged that affiant knows Sam Guy and his general reputation, and his reputation is that of a "disreputable negro thief," and "a violator of law and a maker and seller of Choctaw beer and a preacher," and the other of said additional affidavits filed is a joint affidavit of Philip McMack and his wife, and contains like averments to those contained in the two other additional affidavits filed as to their knowledge of and the reputation of Sam Guy, and also that they know the defendant and his general reputation, and that his reputation is that "he is an honest, truthful, law-abiding citizen."

In addition to the affidavits above enumerated, the defendant in support of his said motion filed the affidavit of Sam Guy, a copy of which is heretofore set out in this opinion, in which Sam Guy avers that the defendant did not commit the larceny of which he was convicted in this case; that affiant swore falsely at said trial of defendant, and that he (affiant) committed the offense of which defendant was convicted, and that the defendant had nothing to do with it.

It is difficult to understand how the character of the defendant, a matured man, who had lived in the community for several years, could be newly discovered evidence. Certainly with the slightest effort defendant could have ascertained what his neighbors thought of him, and on his trial have produced such evidence, if his reputation was good, to generate a doubt of his guilt, and where the state could have rebutted such evidence. This the defendant did not do.

The evidence in this case shows that Sam Guy was well known to defendant and was for some time employed by him, and certainly it would not have required much exertion to have secured the evidence as to Sam Guy's reputation at the trial of the defendant. All the affidavits offered in support of said motion, except the affidavit of Sam Guy, state facts tending to support an impeachment of the state's witness, together with an expression on the part of the affiants as to their being surprised at the conviction of the defendant. Certainly not any one of said affidavits in any manner can be regarded in law as disclosing newly discovered evidence, except possibly the statement contained in the affidavit of Sam Guy, which we will hereafter consider.

A motion for a new trial on the grounds of newly discovered evidence as to the bad character of the state's witness and the good character of the defendant should not be granted, especially when, as in this case, the characters of the state's witnesses are not attacked at the trial, or the good character of the defendant set up.

In *W. T. Caple v. State,* 3 Okla. Cr. 621, 105 Pac. 681, it is held:

(1) "When parties are indicted, they must recognize the fact that it is a serious matter, and be diligent in preparing for trial. It is too late after conviction to begin to investigate the character of the witnesses for the state, of whom they have no notice before trial."

(2) "A new trial will not be granted on the ground of newly discovered evidence to impeach the reputation for truth and veracity of witnesses for the state."

It has been settled by a long line of decisions that a new trial on the ground of newly discovered evidence will not be granted in order that the defeated party may im-

peach the witnesses of his adversary by proving that they are not credible. *Corley v. New York & Harlem R. R. Co.,* 12 App. Div. 410, 42 N. Y. Supp. 941; *People ex rel. Stemmler v. McGuire,* 2 Hun (N. Y.) 269, affirmed 60 N. Y. 640; *Schultz v. Third Avenue R. R. Co.,* 47 N. Y. Super. Co. 285. The cases cited, it is true, were not criminal cases, but the same rule is applicable to a criminal case, on a motion for a new trial on the ground of newly discovered evidence, that is applicable to a civil case. *People v. Baker,* 27 App. Div. 597, 50 N. Y. Supp. 771.

We are therefore of the opinion that the affidavits filed in said motion attacking the character of the named state's witnesses and tending to establish the good character of defendant do not present any grounds whatever why said motion should be granted.

The defendant most earnestly insists that, under the holding of this court in the second paragraph of the syllabus in *Chappell v. State,* 6 Okla. Cr. 398, 119 Pac. 139, which reads:

"Where, subsequent to a conviction, a witness who testified for the state upon the trial of the case makes an affidavit, stating that the testimony given by such witness was false, and where the testimony of the state, excluding such admittedly false testimony, is not conclusive as to the guilt of the defendant, a new trial should be granted"
—the court committed prejudicial error in overruling the motion for a new trial on the ground of newly discovered evidence.

In *People v. Shilitano,* 218 N. Y. 161, 112 N. E. 733, L. R. A. 1916F, 1044, it is held:

"Where, after conviction, the state's witnesses asserted that their testimony at trial was false, accused is not as a matter of law entitled to a new trial, but new

trial will be granted only if the trial court in the exercise of its discretion determines that the recantation was probably true."

In People v. Tallmadge, 114 Cal. 427, 46 Pac. 282, the court said:

"Applications on the ground of newly discovered evidence are addressed to the discretion of the trial court, and its action will not be set aside except for an abuse of such discretion, and the presumption is that the discretion was properly exercised; and it has been repeatedly held by this court that such applications are to be regarded with disfavor. Hayne on New Trial and Appeal, par. 87, and cases there cited: People v. Sutton, 73 Cal. 243, 15 Pac. 86; People v. Freeman, 92 Cal. 359, 28 Pac. 261. It cannot be said that, as a matter of law, a new trial should be granted whenever an important witness against the defendant shall make an affidavit that he committed perjury in his testimony; if that were so, justice would be defeated in many grave cases. Notwithstanding such an affidavit, the appellate court will rest largely upon the discretion of the judge who heard the trial, and will not disturb his ruling except in clear cases of abuse of discretion."

In People v. McGuire, 2 Hun (N. Y.) 269, it is said:

"By one of the affidavits, a witness who gave material evidence in the plaintiff's favor, concerning the number of votes polled in one of the contested election districts, stated in substance that he had committed perjury in testifying as he did, but the court declined to set aside the verdict on the faith of it. In that respect the decision was clearly right, because the affidavit of such a person is not entitled to so much weight as to justify the conclusion that the evidence given by him, and which the jury may have regarded as credible and reliable, was corruptly and wilfully false."

No authority is pointed to in support of said paragraph 2 of the syllabus in Chappell v. State, supra, and we

are of the opinion that the same is in conflict with the great weight of authority, and is too broad and does not correctly and fully state the law. An affidavit of a material witness for the state that he perjured himself on the trial of the defendant, and proof of the good character of the defendant, do not as a matter of right entitle a defendant to a new trial; but the granting of same is a matter of discretion of the trial court, and the court, under such state of the record, should not grant a new trial unless the court, in the exercise of its sound discretion, determines that the recantation of the witness was probably true. The said second paragraph of the syllabus in *Chappell v. State* is hereby modified to conform to the views herein expressed in regard to said syllabus.

It is the settled law of this court that a case will not be reversed on account of the overruling of a motion for a new trial, unless it is clearly shown that the court abused its discretion.

"A motion for a new trial * * * is addressed to the sound discretion of the court." *Jim Noel v. State,* 14 Okla. Cr. 548, 174 Pac. 293.

"Motions for new trial upon the ground of newly discovered evidence, made before or after judgment, are addressed to the discretion of the trial court, and its ruling thereon will not be disturbed, except for an abuse of discretion." *Frank Hawkins v. State,* 11 Okla. Cr. 73, 142 Pac. 1093.

See, also, *Drew v. State,* 6 Okla. Cr. 348, 118 Pac. 667; *Howey v. State,* 9 Okla. Cr. 453, 132 Pac. 499; *Harper v. State,* 7 Okla. Cr. 581, 124 Pac. 1116.

The defendant finally insists that under the third paragraph of the syllabus in *Smith v. State,* 3 Okla. Cr. 629, 108 Pac. 418, which reads:

"A judgment of conviction will be reversed on appeal where the record shows that it is founded solely on perjured testimony"

—the court committed reversible error in overruling the motion for a new trial on the ground of newly discovered evidence. The said syllabus relied upon undoubtedly correctly announces the law, but it is not in point in the instant case, because the record does not show that the conviction in this case "was founded solely on perjured testimony," there being other evidence than the evidence set up in the motion as perjured, and there is no evidence in the record except the averments of the *ex parte* affidavits filed to support the motion for a new trial that perjury was committed in the trial of the case. It is true that there was conflict in the evidence as to the guilt of the defendant; but, there being evidence in the case to reasonably support the verdict rendered, this court cannot disturb it, the facts being exclusively with the jury.

The contrary statements made by Barrow out of court as to the facts testified by him at the trial are not grounds for a new trial, or even of consideration.

"A verdict should not be set aside because of affidavits being filed in support of a motion for new trial showing that the affiants have heard a witness for the state make statements directly contrary to such witness' testimony in the trial." *Bowlegs v. State*, 9 Okla. Cr. 69, 130 Pac. 824.

Again, at the utmost, the only affidavit of the affiants filed at all worthy of any consideration is that of Sam Guy, and, if the evidence of Sam Guy at the trial be excluded, there remains sufficient evidence to reasonably support the verdict of the jury.

We are unable to see that error was committed in overruling the motion for a new trial on account of newly discovered evidence.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.