LOUIS B. FINKELSTEIN v. STATE.

No. A-9540.   Jan. 25, 1940.
(99 P. 2d 167.)

342

David Tant, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for the State.

BAREFOOT, J. The defendant was charged in Oklahoma county with the crime of receiving stolen property; was tried, convicted and sentenced to pay a fine of $250 and serve 90 days in the county jail, and has appealed.

It is contended that the verdict and judgment is not sustained by sufficient evidence; that the conviction was based upon the uncorroborated testimony of an accomplice; and that the record shows the judgment was founded solely upon perjured testimony. All of these assignments may be considered together.

The defendant, Louis B. Finkelstein, was engaged in the junk and auto salvage business at 800 South Broadway street, Oklahoma City, and had been so engaged for 21 years. He was charged with receiving stolen property, to wit: Two hundred fifty-five pounds of lead junk of the value of $10.20, on the 8th day of June, 1937, from two boys, Jimmie Wilson and James Ross.

Each of these boys testified that they had stolen the above-described lead from the Southwest Battery Company, in the nighttime, and while the night watchman was not looking, and that they had stolen lead many times previous to this, and had sold the same to defendant on ten or twelve different occasions from February 22, 1937, to June 8, 1937, always carrying it in tow sacks and selling it to the defendant in person. They also testified that on one occasion, prior to the sale on the 8th of June, they had told the defendant it had been stolen, and after that he made no inquiry as to where they had received it.

Their testimony was corroborated by the officers of the Southwest Battery Company, who testified to the losing of the lead, and who identified it at the place of business of the defendant, where it was located by the police officers, and was in tow sacks lying near the scales where it had been weighed. These police officers testified to the finding of the property at the defendant's place of business a few days after the 8th of June, 1937, and of the taking of each of the boys to that place of business, and of the defendant identifying them as the ones who had sold him the property.

The record reveals that each of these witnesses, Jimmie Wilson and James Ross, while in the county jail, made written statements in which they stated that the testimony which they had given at the preliminary examination was untrue, and that at no time had they told the

defendant, Louis B. Finkelstein, that the property had been stolen. These statements were prepared by some attorney who handed them to a trusty, and were signed by each of the witnesses while in jail. At the time of the trial they claimed they were forced to sign these statements by reason of the attitude of their fellow prisoners in jail, and they were afraid not to sign the same.

The record also reveals that after the trial was over and defendant had been convicted, and at the time motion for new trial was presented, affidavits were attached thereto which showed that these two witnesses appeared before the attorney representing the defendant and informed him they desired to make affidavits stating that part of the evidence given by them at the trial was false. Defendant's attorney called in a disinterested lawyer, and a reputable member of the Oklahoma county bar, and he took statements from each of the witnesses, in which they stated that they had testified untruthfully at the trial of defendant when they stated that they had informed him that the lead which they sold him was stolen. No other part of their testimony was questioned.

The cases from this court cited in defendant's brief uphold the doctrine that it is necessary to corroborate an accomplice before a conviction may be had in this state. The Oklahoma Statutes so provide, Oklahoma Statutes 1931, section 3071; 22 Okla. St. Ann. § 742, but the decisions, in construing this statute, do not support the doctrine that defendant and the witnesses, Jimmie Wilson and James Ross, were accomplices of the defendant under the facts in this case.

In the case of Key v. State, 38 Okla. Cr. 169, 259 P. 659, cited by defendant, the general rule is stated that a person who steals property is not an accomplice of the

one who receives the property knowing it to be stolen. They are independent crimes. The case recognizes an exception to this general rule, that where the person who commits the theft and the one who receives the same conspire together in a prearranged plan for one to steal the property and deliver the same to the other, the one who receives it is then an accomplice of the one who commits the theft, and the one committing the theft is an accomplice of the one who receives it. This is not the fact in the instant case. The defendant himself denies that he had any agreement of any kind with the witnesses, Jimmie Wilson and James Ross, or that he had any knowledge that the property was stolen. There is no evidence that there was any arrangement between the defendant and the witnesses for them to steal the property and deliver the same to him. This general rule is announced in the case of White v. State, 23 Okla. Cr. 198, 214 P. 202, cited by defendant. There the evidence discloses an agreement between the defendant and the persons committing the theft. Also the cases of Logan v. State, 23 Okla. Cr. 316, 214 P. 944, and Yeargain v. State, 57 Okla. Cr. 136, 45 P. 2d 1113.

The cases from other jurisdictions cited by defendant, State v. Keithley, 83 Mont. 177, 271 P. 449, and, State v. Coroles, 74 Utah 94, 277 P. 203, are to the same effect. The cases from this court which uphold the doctrine announced as the general rule are: Buttry v. State, 18 Okla. Cr. 330, 194 P. 286; Brownell v. State, 33 Okla. Cr. 323, 244 P. 65; Pringle v. State, 32 Okla. Cr. 187, 239 P. 932.

The contention that the judgment and sentence is based upon perjured testimony cannot be sustained. It is true that after the trial and conviction of this defendant, the witnesses, Jimmie Wilson and James Ross, made affidavits that part of the evidence which they gave at the trial, that they had told defendant that the property was

stolen, was false, but there was no denial of any other part of their testimony. Of the fact that the property was stolen there can be no doubt. This case was tried before the court, a jury having been waived by the defendant. The court, no doubt, came to the conclusion, as he should have done, that from the facts and circumstances surrounding this case, the defendant should have had knowledge, and did know, that the property was stolen without the necessity of being informed by the boys themselves.

In the case of Martin v. State, 34 Okla. Cr. 274, 246 P. 647, 648, cited by defendant, the court says:

"It would be a dangerous rule to allow, generally, a conviction to be overturned by the ex parte affidavit of a witness that he committed perjury in the trial of the case. Ryal v. State, 16 Okla. Cr. 266, 182 P. 253. If the filing of such an affidavit were generally recognized as a sufficient ground for a new trial as newly discovered evidence, we should see convicted criminals pursuing witnesses who had testified against them endeavoring to procure affidavits impeaching their own testimony."

If the evidence was such that upon it alone the verdict had been rendered, or that the other evidence in the case was such as to cause one to believe that the crime may not have been committed, it would be much more appealing, but as where in the instant case there was sufficient evidence upon which to base a conviction even though the evidence given was not true, there would be no error in the trial court overruling the motion for new trial, based upon such affidavits. It will be noted that the case of Chappell v. State, 6 Okla. Cr. 398, 119 P. 139, cited by defendant, is overruled by the case of Ryal v. State, 16 Okla. Cr. 266, 182 P. 253.

Here we have an experienced business man, who had been buying junk and second-hand property for many years. Two young boys presenting to him, not only once,

but according to his testimony, six or eight times, and according to their testimony, ten or twelve times, tow sacks of lead. The only question he asked was their names and addressses, and where they got the property. Just enough, as he thought, to satisfy the city ordinance, which required him to keep certain information as to all property bought. He made no effort to investigate if the proper name and address was being given by the boys. As a matter of fact, one of the boys gave him an assumed name, and did not live at the address given. No effort to ascertain if they were telling the truth as to where they secured the property. How easy it would have been for this defendant to have called the officers of the law and had them satisfy themselves before making this purchase of lead from these young boys. One of them had been arrested and before the courts of this city and county on charges of stealing upon several different occasions. If an investigation had been made, the purchase would never have been made by this defendant and he would not now be before the courts. It is just such practices as this by those who deal with many young boys of this city and state that is causing them to steal and pilfer. They have too easy an outlet for the property which they steal and the officers of this county and state are to be commended for prosecuting the ones who receive the stolen property the same as those who steal it.

The trial court, at the time of announcing the judgment in this case, said:

"I have known the Finkelstein family here for many years, different branches of that family. This defendant in this case had two prior convictions on the same sort of an offense. It is true that he has a wife and six or seven children. I do not doubt but what he is a pretty good citizen, pays his taxes and spends his money here and supports his family and does the best he can by them. There

348

is no question on earth in my mind but what he knew this was stolen property. If there was any question about that at all, I would turn him loose."

With the knowledge that this defendant had been convicted upon two prior occasions, and a finding that defendant knew the property was stolen at the time he purchased the same, the court was indeed lenient with him when he only assessed a fine and jail sentence.

We find no error in the record and the judgment and sentence of the district court of Oklahoma county is therefore affirmed.

DOYLE, P. J., and JONES, J., concur.