JOHN COMBA v. STATE.

No. A-9606.   Feb. 1, 1940.
(99 P. 2d 170.)

374

Frank Nesbitt and Nelle Nesbitt, both of Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.  Defendant was charged in Ottawa county with the crime of receiving stolen property; was tried, convicted and sentenced to serve a term of imprisonment in the state penitentiary for a period of two years and six months and to pay a fine of $250, and has appealed to this court.

The testimony of the state showed that eleven bars of steel were stolen from the Commerce Royalty & Mining Company by Cleo and Uris Mashburn and sold to the defendant for $55 pursuant to a previous arrangement made with the defendant by Cleo Mashburn; that Cleo Mashburn talked to the defendant before the theft was committed and proposed to sell to the defendant some steel which Mashburn said he would steal from the Commerce Royalty & Mining Company; that the defendant in that conversation agreed to buy the steel and loaned Mashburn a trailer with which to haul the steel; that six bars of steel were hauled by the Mashburns in the defendant's trailer to the lumber yard of the defendant the night after the conversation occurred, and five bars of steel were brought

to the same place in the nighttime two or three weeks later; that the defendant was engaged in the second-hand lumber business in the town of Picher.

The night watchman of the Romo Mine near Picher testified that the defendant sometime during the month of April brought six bars of steel and later five bars of steel to the mine, and placed them in the compressor room at the mine, and told the night watchman that the steel had been ordered by Mr. Robinson, owner of the mine. That the defendant upon his arrest first denied buying any steel from the Mashburns at any time; but after being confronted with affidavits of the Mashburns, defendant admitted buying the steel and took the officers to the boiler room of the mine and showed them the eleven bars of steel that had been stolen. The steel was identified by the trademark AMCO stamped on the end of each bar of steel; and the testimony showed that the steel was new, and not rusty.

A letter was introduced in evidence showing that the defendant presented Mr. Robinson, owner of the mine, a bill for $120 for the sale of the steel to Robinson. The Mashburns pleaded guilty to a charge of grand larceny, and testified for the state in the prosecution of the defendant.

The defendant in his own behalf; denied ever having any talk with Cleo Mashburn or purchasing any steel from Cleo Mashburn, but claimed that he had a conversation with Uris Mashburn relative to a purchase from Uris Mashburn of the steel in controversy; but that Uris Mashburn represented in the conversation that he had found the steel in a mill pond while swimming, and that he bought the steel under those circumstances and loaned Uris Mashburn a trailer to haul the steel from Joplin.

The defendant, as well as the Mashburns, had lived in the town of Picher for several years. The Mashburns had been convicted of felony charges on at least three occasions, while the defendant Comba admitted on cross-examination as follows:

"Q. Just don't know how many times you have been convicted? A. Well, every time you catch me, and you wasn't doing nothing else, watching for me all the time."

Counsel for the defendant cites several cases in his brief which set out the general rules of law concerning the question of accomplice. We agree with the rules set forth by the court in those opinions, but they do not sustain the contention the defendant makes here. The chief case relied upon by the defendant is Carter v. State, 55 Okla. Cr. 234, 28 P. 2d 581. In that case, however, the conviction was affirmed and the court denied the very contention of the defendant which is made herein.

The defendant bases his argument for a reversal of this case upon his contention that the court erred in giving its instruction No. 6, in which instruction the jury were told as a matter of law that the witnesses Cleo and Uris Mashburn were accomplices of the defendant instead of submitting that question to the jury as a question of fact for the determination of the jury.

Instruction No. 6 complained of is as follows:

"The court tells you as a matter of law that the witnesses, Cleo Mashburn and Uris Mashburn, are accomplices of the defendant in this case, and the defendant cannot be convicted upon the testimony of these witnesses, unless their testimony be corroborated by such other evidence as tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of an offense, or the circumstances thereof. It is not necessary that the corroborating

evidence go so far as to establish by itself, and without the aid of the testimony of an accomplice, that the defendant committed the crime charged. And, if there be sufficient corroborating evidence, outside of that given by the accomplices, which when considered, together with that of the testimony of such accomplices, satisfies the minds of the jury, beyond a reasonable doubt of the guilt of the defendant, then his guilt is sufficiently established.

"In law one accomplice cannot corroborate another accomplice, in so far as meeting the legal requirement is concerned. In others words it would not matter how many accomplices there are in a case, the testimony of each is that of an accomplice, and is not to be considered as corroborating testimony."

The statutes of this state provide that a conviction cannot be had upon the uncorroborated testimony of accomplices. Section 3071, O. S. 1931, 22 Okla. St. Ann. § 742.

The term "accomplice," as used in section 3071, O. S. 1931, 22 Okla. St. Ann. § 742, providing that no person shall be convicted of a crime on the testimony of an "accomplice," without corroboration, is construed as meaning one culpably implicated in the commission of the crime of which the defendant is accused; in other words, an associate, one who knowingly and voluntarily co-operates, or aids or assists in the commission of the crime. Sipes v. State, 36 Okla. Cr. 1, 251 P. 511; Hendrix v. State, 8 Okla. Cr. 530, 129 P. 78, 43 L. R. A., N. S., 546; McKinney v. State, 20 Okla. Cr. 134, 201 P. 673; Blake v. State, 55 Okla. Cr. 34, 24 P. 2d 362.

"The general rule of law is that a person who steals property is not an accomplice of the one who receives the property, knowing it to be stolen. They are independent crimes." Finkelstein v. State, 68 Okla. Cr. 341, 99 P. 2d 167; Key v. State, 38 Okla. Cr. 169, 259 P. 659; Pringle v. State, 32 Okla. Cr. 166, 239 P. 948; Logan v.

State, 23 Okla. Cr. 316, 214 P. 944; White v. State, 23 Okla. Cr. 198, 214 P. 202; Buttry v. State, 18 Okla. Cr. 330, 194 P. 286.

"The well-recognized exception to this general rule is that if the one who steals and the one who receives the property conspire together, or enter into a prearranged plan for one to steal the property and deliver the same to the other, the one who receives it is the accomplice of the one who commits the theft, and vice versa." Finkelstein v. State, supra. Brownell v. State, 33 Okla. Cr. 323, 244 P. 65; Buttry v. State, 18 Okla. Cr. 330, 194 P. 286; State v. Keithley, 83 Mont. 177, 271 P. 449; State v. Coroles, 74 Utah, 94, 277 P. 203.

Most of the states provide for the corroboration of the testimony of an accomplice by independent evidence before a defendant may be convicted of the offense charged. The statute was adopted for the purpose of protecting the accused. Its purpose being to prevent one guilty of a crime from implicating another falsely, for hope of clemency, motives of revenge, or for any other reason. Questions under this statute are generally raised by the defendant insisting that the court erred in not instructing that a witness testifying against the accused was in fact an accomplice.

There has been some language used in the dicta of the court in certain opinions, notably Carter v. State, supra, which is cited in defendant's brief that hurried reading might convince a person that they support defendant's theory. In that case, however, the conviction was affirmed, and the court denied the very contention of the defendant made herein. But after disposing of the question in that case, the court by way of dictum states [55 Okla. Cr. 234, 28 P. 2d 583] :

"Counsel here argue that where defendant denies generally any connection or accomplicity with the witness who is designated as an accomplice, the court, regardless

of the testimony of the witness, in no event may instruct the jury that the witness is an accomplice. Surely this cannot be what is meant, for if defendant enters a plea of not guilty and contests the truth of the state's testimony of a claimed accomplice to prove his guilt, he does not admit the testimony of such witness, for to do so would be tantamount to a plea of guilty. Nor does the fact that he denies the testimony of the witness designated as accomplice make the testimony disputed within the meaning of the term as used in the cases generally. That is to say a denial of guilt and general testimony by accused that he had no connection with the witness testifying as an accomplice is not the dispute meant in the various decisions. But on the other hand where he testifies to the state of facts detailed by the witness, or admits a connection with the witness tending to show an accomplicity, but explains his connection and disputes and denies the significance and tendency of the evidence to prove accomplicity. Then an instruction on such contested evidence that the witness is an accomplice, may amount to a charge on the weight of the evidence or may be an assumption that the testimony of the witness was true and that of defendant necessarily untrue. But not so when he does not testify to the state of facts detailed by the witness, but merely denies generally any connection with the witness."

Cleo Mashburn is the only one of the Mashburns who testified in the state's case in chief. The defendant does not admit a connection with this witness, but wholly denied talking to Cleo Mashburn or having any connection with Cleo Mashburn.

The defendant contends that since he admits talking to Uris Mashburn and agreed to buy the steel from him and loaned him a trailer to haul the steel, but explains his connection with the witness by stating that he did not know the steel was to be stolen, that he comes within the reasoning of the Carter Case, supra; and that the court erred in not instructing the jury as to what in law

it takes to constitute an accomplice and then leaving it as a question of fact for the jury to determine as to whether the Mashburns were accomplices.

We think this contention is without merit. If Cleo Mashburn is not an accomplice of the defendant, then his testimony does not have to be corroborated. The instruction given does not aid the state, but is for the protection of the accused, and is probably more favorable to the defendant than he is entitled to under the evidence. By instructing the jury as a matter of law that the Mashburns were accomplices of the defendant, a greater burden was thereby placed on the state.

We have carefully examined the instructions given in this case. All of the instructions must be construed together as a single charge. In this case we find that together with the instruction relative to accomplices, and the elements that must be proved to sustain a charge of receiving stolen property that the jury is also told that the defendant is presumed to be innocent and that the presumption of innocence remains with the defendant throughout the trial and that the burden is upon the state to overcome this presumption of innocence and to prove his guilt beyond a reasonable doubt, and are told the facts necessary to be proved before a verdict of guilty can be returned. The accomplice instruction complained of, when considered together with these other instructions, amounts in substance to the court saying to the jury:

"The witness Cleo Mashburn has testified to a state of facts tending to connect himself and the defendant with the commission of the offense charged. Cleo Mashburn's testimony makes him what is known in law as an accomplice. The law looks upon the testimony of an accomplice with suspicion, and will not permit a conviction to be had on his testimony alone; but before you can convict the defendant, you must believe beyond a reasonable doubt

that his testimony is true, and must further find that Mashburn is corroborated by other independent evidence tending to connect defendant with the commission of the crime, and you must find and believe beyond a reasonable doubt from all of the evidence construed together that the defendant is guilty of the crime charged."

The court resolved the question in the defendant's favor by the giving of the instruction complained of. The instruction given is more favorable to an accused than one which leaves to the jury the question of whether or not the witness is an accomplice. Submitting the question of accomplicity to the jury may in some cases confuse them. It is conceivable that they might erroneously conclude that an accomplice in fact is not an accomplice, and return a verdict of guilty without sufficient corroboration, which they might not have done if they had understood clearly that the witness was as a matter of law an accomplice and that corroboration was necessary.

Upon a consideration of all of the evidence and the instructions as a whole, we are satisfied that the defendant has had a fair and impartial trial.

This case is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.