### BRYAN B. BURNS v. STATE.

No. A-9855.  Sept. 10, 1941.

(117 P. 2d 144.)

J. P. Hughes, of Hobart, Finley McLaury, of Snyder, and Clayton Carder, of Hobart for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Bryan B. Burns, was charged by indictment presented by a grand jury of Kiowa county with the crime of uttering a forged instrument, was tried, found guilty, but the punishment was left to the court, who thereupon sentenced the defendant to two years in the State Penitentiary, from which judgment and sentence thus pronounced the defendant has appealed to this court.

The defendant makes the following assignments of error:

(1) The indictment was insufficient to charge an offense, and the demurrer of the defendant should have been sustained.

(2) Court erred in admitting evidence of other alleged offenses.

(3) Court erred in admitting in evidence the pay roll with Harold Jones' name signed thereon.

(4) Court erred in refusing to give certain instructions requested by defendant.

In order to arrive at a better understanding of the questions presented, a short summary of the evidence is presented.

The defendant was charged with uttering and passing with intent to defraud a certain state highway warrant in the sum of $100, payable to one J. W. Fagg, upon which the endorsement of the said J. W. Fagg had been forged to the knowledge of the defendant.

J. W. Fagg testified that he was 17 years of age at the time of the transaction out of which the prosecution arose. His father conducted a barbershop which is just north of the theater which was owned and operated by the defendant. Witness did not work for the State Highway Department in the summer of 1938, nor at any other time. He did not receive the state warrant, dated August 26,

1938, payable to J. W. Fagg in the sum of $100, nor did he sign his name which appeared on the back of said warrant. Witness knew nothing of said warrant and never saw it until it was exhibited to him by an investigator, just preceding the presentment of the indictment against defendant.

Witness had a brother who was employed as chief operator in defendant's picture show. This brother hired witness occasionally to sweep the theater, and he received a pass to the show as compensation. Witness probably swept out two or three times a week.

Clarence R. Jackson testified that in 1938 he was employed by the State Highway Department as a truck driver with supervision of some of the projects in Kiowa county; that he was in defendant's office in the theater on August 30, 1938, at which time defendant called his attention to some checks which witness had delivered to defendant a few days before, and defendant wanted him to help sign them up. He argued the question a little and then signed two of the checks. The name of J. W. Fagg on state's exhibit No. 1 was signed by witness in the presence and at the request of the defendant. Defendant endorsed the name of Harold Jones on a state warrant, payable to Harold Jones in the sum of $42, which is state's exhibit No. 2. Witness at the request of defendant endorsed the name of Charles Wilhite on state's exhibit No. 3, being a state warrant, dated August 26, 1938, payable to Charles Wilhite in the sum of $200. Defendant also had in his possession at that time a state warrant payable to Homer Smith in the sum of $200. Homer Smith was a fictitious person.

On cross-examination the witness swore that he received from the highway superintendent at Altus warrants to be delivered to the men on work in the third commissioner's district of Kiowa county. Some of the workmen

would borrow money on their time before the warrants were received. Witness delivered to the defendant the four warrants above referred to. Witness had worked for the Highway Department most of the time since 1927. DeRoy Burns had been his legislative sponsor since his election as senator. The defendant had loaned money to some of the workmen, and witness had delivered the highway warrants to defendant after the same were given to him by the district superintendent at Altus.

Witness identifies defendant's exhibit No. 1, which was a piece of paper in the handwriting of the witness with several names and a sum of money set opposite each name, purportedly representing salary warrants due to the men whose names appeared on said writing. All of the names on said paper with the exception of Troy Wilhite were fictitious.

Witness identifies defendant's exhibit No. 2, being a check of the defendant in the sum of $631.56 which corresponds to the totals shown on the slip of paper identified as defendant's exhibit No. 1, less five per cent discount. Witness took the time represented by the fictitious names shown on defendant's exhibit No. 1 and sold it to Bob Reid at Altus, and brought the money and paid the campaign expenses of DeRoy Burns through instructions of defendant and his brother, DeRoy Burns.

Harold Jones testified that he had lived in Indiahoma all of his life and was employed in the schools at Indiahoma teaching music. He was commonly known as "Chink" Jones. In the summer of 1938, up until the primary election, the witness played in the band to help the DeRoy Burns campaign. Witness had never worked at any time for the State Highway Department, and had never signed any pay roll. He did not receive state's exhibit No. 2, being a warrant in the sum of $42, payable to Harold Jones, nor

state's exhibit No. 5, being a $10.50 warrant payable to Harold Jones, and did not endorse either of said warrants. DeRoy Burns got him to work in the campaign and paid him in cash.

Thomas L. Vail, and Lewis Wilson testified that they worked on what was known as the mud-jack project, east of Snyder, in July, 1938, and knew J. W. Fagg; that Fagg did not work on said project.

C. H. Fawks, president of the First National Bank of Snyder, testified that the J. W. Fagg warrant in controversy was cleared through his bank on August 30, 1938.

The defendant, through his counsel, then stipulated that state's exhibits Nos. 1, 2, 3, and 4 were deposited at the First National Bank of Snyder, and the defendant received either credit or the equivalent for such warrants, and that said warrants were transmitted in due course to and paid by the State Treasurer. Witness Fawks identified state's exhibit No. 6, which was a deposit slip showing a deposit to the credit of the defendant in the total sum of $674 on August 30, 1938, including check items in the sum of $10, $100, $200, and $125; also, state's exhibit No. 7, showing a deposit to the credit of the defendant on September 1, 1938, which included a check in the sum of $42.

T. M. Fagg testified on behalf of the defendant that he was employed by the defendant in the summer of 1938 at the defendant's theater in Snyder. Witness was authorized to hire people to sweep and clean up the theater; and he did hire J. W. Fagg and other boys to do this job, and gave them passes to the theater for their work. The defendant had nothing to do with the hiring of these boys.

The defendant, in his own behalf, testified that he had known Clarence Jackson several years. That in June,

1938, Jackson came to his office at the theater and asked him if he wanted to loan some money on the pay roll; that he had never had any experience with the pay roll and did not know anything about it. Jackson explained to him that he could get the warrants at five per cent discount and would not have to lend money for more than 30 to 60 days. Jackson made out a list and the amounts owing to the fellows that were working, and defendant gave him a check, less 5 per cent, to cover that amount. Jackson brought him the warrants in full; some of them were endorsed and some were not endorsed. Jackson said it was all right to go ahead and endorse the warrants which were not endorsed as the men had already sold them to him, and he was authorized to endorse their names; that he did endorse names on several of the warrants, just how many he did not remember. After that defendant continued to lend Jackson money, and Jackson would bring these checks in there to him. Defendant did not keep any books or records of what he had lent, but estimated he had bought $1,500 or $2,000 worth of warrants.

Defendant stated that he did not know that the J. W. Fagg warrant was fictitious or that Fagg had not worked on the highway. He did not know Harold Jones, except by the name "Chink" Jones. He admitted endorsing the Harold Jones name on the warrant, but did not know that it was a fictitious warrant.

The substance of the testimony of the defendant was that he purchased these warrants from Clarence Jackson who was purportedly acting as the agent for workmen working on the highway projects in Kiowa county: that he purchased these warrants in good faith as a business venture without any knowledge of their fictitious character and wholly without any intent on his part to defraud the state.

At the request of the prosecution the defendant wrote several names, which writing was submitted in evidence. The defendant further introduced several witnesses who testified to the good reputation of the defendant prior to the filing of the indictment. The defendant admitted pleading guilty to the offense of driving a car while under the influence of intoxicating liquor and receiving a six months' suspended sentence.

In rebuttal the state offered in evidence various exhibits, including certain warrants, the pay roll with Harold Jones' name appearing thereon, and the exhibits containing the specimen handwriting of the defendant.

In connection with the first assignment of error, it is urged by the defendant that the prosecution is brought under section 2125, O. S. 1931, 21 Okla. St. Ann. § 1577, which reads as follows:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

That under said statute it is necessary that the name of the person to whom the forged instrument was uttered must be set out in the indictment because it is part of the description of the offense; and that because of this omission the indictment is insufficient on its face to charge the the offense of uttering a forged instrument or any other public offense against the defendant.

The indictment herein was not brought under the provisions of § 2125, supra, but was based on section 2139, O. S. 1931, 21 Okla. St. Ann. § 1592, which reads as follows:

"Every person who, with intent to defraud, utters or publishes as true any forged, altered or counterfeited instrument or any counterfeit gold or silver coin, the forging, altering, or counterfeiting of which is hereinbefore declared to be punishable, knowing such instrument or coin to be forged, altered or counterfeited, is guilty of forgery in the second degree."

The indictment against the defendant is as follows:
"* * *

"That on the 30th day of August, A. D., 1938, at and within said county, and within the jurisdiction of said court, one Bryan B. Burns, then and there being, did then and there, unlawfully, willfully, wrongfully, utter and pass as true, a certain false and forged instrument, to wit: a warrant of the State of Oklahoma, of the term and tenor as follows:

```
                    " 'State of Oklahoma
Warrant                 Office of              No. 12491
Great Seal of 1939    The State Auditor
  the State of
   Oklahoma         To the State Treasurer
                      Oklahoma, Okla.       Oklahoma City

Date      Number     Claim No. Pay            or
Aug 26 38 12,491          16364  to J. W. Fagg Order
          Exactly $100 & 00 Cts                $100.00
                         C. C. Childers
H. C. & M. Fund          State Auditor
Registered Payable       Asst. State
Hubert L. Bolen            Auditor   Scott Stine
State Treasurer
Asst. State
Treasurer  C. B. Sebring
```

(Endorsement on the Reverse Side)
" 'J. W. Fagg    First National Bank and Trust Company
   B. B. Burns   Oklahoma City, Oklahoma.  Aug. 31, 1938.'

said endorsement of the said J. W. Fagg being then and there false and forged, all of which he the said Bryan B. Burns then and there well knew, said warrant with the false and forged endorsement thereon being uttered and passed by him, the said Bryan B. Burns, with the unlawful and felonious intent on the part of the said Bryan B. Burns to cheat and defraud the State of Oklahoma, and Contrary to the form of the Statutes in such case made and provided, and against the peace and dignity of the State. * * *''

This court has uniformly held that the true test of the sufficiency of an indictment or information is not whether it may have possibly been made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. Warren v. State, 24 Okla. Cr. 6, 215 P. 635.

A consideration of the indictment discloses the following:

1. It alleges that the defendant did, in Kiowa county, utter and pass as true a certain false and forged instrument.

2. The warrant to J. W. Fagg is copied in full in said indictment, which shows the purported endorsement of J. W. Fagg, B. B. Burns, and the First National Bank and Trust Company of Oklahoma City on the back thereof.

3. Said indictment alleges that the endorsement of said J. W. Fagg was false and forged.

4. That Bryan Burns knew that said endorsement was false and forged, but uttered and passed said warrant with knowledge of said forgery.

5. Bryan Burns uttered and passed said instrument with the intent to cheat and defraud the State of Oklahoma.

There are some states which apparently hold that an indictment for uttering a forged instrument should allege the person to whom the forgery is uttered or passed, or excuse the omission with the statement that the person to whom it was uttered was unknown. Goodson v. State, 29 Fla. 511, 10 So. 738, 30 Am. St. Rep. 135; Annotations to Rhode Island v. Murphy, 16 L. R. A. 553.

However, the majority rule seems to be in those states having statutes similar to ours that such an allegation is not necessary. State v. Weaver, 149 Iowa, 403, 128 N. W. 559, 31 L. R. A., N. S., 1046, Ann. Cas. 1912C, 1137.

In 23 Am. Jur. 695, 44, it is stated:

"There is a sharp conflict as to whether the name of the person to whom the paper was offered or passed must be alleged. On the one hand, it is squarely held that such an allegation is necessary, or else an averment of lack of knowledge in the premises, while, on the other hand, it is held with equal positiveness that this allegation is not necessary. The latter holding, while unquestionably representing the majority rule, is largely influenced by the statutes dispensing with the necessity of alleging the name of the person 'intended to be defrauded,' this phrase being construed to apply to the person to whom the paper is offered or passed as well as to the person whose name is forged."

Our court in the case of William v. State, 11 Okla. Cr. 82, 142 P. 1181, held that it was not necessary to set out the name of the person intended to be defrauded in a forgery case, and cites the case of State v. Weaver, supra, as authority for such decision. For further authority in support of this rule, see the extensive annotation in the note to State v. Weaver, supra.

This court has adopted a very liberal attitude in the construction of indictments or informations. The statute on this subject itself provides that no indictment is in-

sufficient by reason of a defect or imperfection in the matter of form that does not tend to prejudice the substantial rights of defendant in the trial of the case. Section 2892, O. S. 1931, 22 Okla. St. Ann. § 410; section 3210, O. S. 1931, 22 Okla. St. Ann. § 1273.

With the court committed to this view, it is readily apparent that the indictment herein is sufficient to fully advise the defendant of the nature of the offense with which he stood charged, and to enable him to prepare his defense thereto. We see no error of the court in overruling the demurrer to the sufficiency of this indictment.

It is next urged by the defendant that the trial court committed reversible error in admitting in evidence state's exhibits Nos. 3, 10, and 11, which were warrants payable either to Charles Wilhite or Cecil Wilhite, for the reason that there was no evidence that these persons had not, in fact, worked for the Highway Department or any evidence which would tend to impugn the good faith of the defendant in cashing these warrants.

In Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779, it is held that in a prosecution for uttering a forged instrument with intent to defraud, evidence of similar acts of forgery or of uttering is admissible as bearing on the question of intent with which the act charged was committed.

For the purpose of proving the fraudulent intent of the defendant and a general scheme and design on his part to defraud the state, the state introduced in evidence eight warrants. The defendant in his brief concedes the admissibility of the following warrants: three of them, state's exhibits Nos. 2, 5, and 8, being payable to Harold Jones, which defendant concedes were admissible for the reason that the evidence showed conclusively that Harold Jones did not work for the state; two of them, state's

exhibits Nos. 4 and 9, were warrants payable to Homer Smith, their admissibility being admitted for the reason, as stated in defendant's brief, the testimony showed there was no such person. The remaining three warrants, state's exhibits Nos. 3, 10, and 11, are attacked in the brief of the defendant for the reason that since it is not shown that Charles and Cecil Wilhite did not work for the Highway Department that said warrants do not constitute other offenses, and the admission of the same was prejudicial for the reason that it left an inference with the jury that said warrants were in fact illegally cashed by the defendant.

In examining the record upon this proposition, we find that state's exhibit No. 3 was the Charles Wilhite warrant for $200, dated August 26, 1938, and is one of the four warrants which Clarence Jackson brought to the defendant's office on August 30, 1938, and which were endorsed by the defendant or Jackson and deposited on that date to the credit of the defendant.

State's exhibit No. 1 (the J. W. Fagg warrant), state's exhibit No. 2 (the Harold Jones warrant), state's exhibit No. 3 (the Charles Wilhite warrant), and state's exhibit No. 4 (the Homer Smith warrant), were all handled at the same time; and from the evidence, it is admitted that the payees' names were signed either by Jackson or defendant to each instrument.

In the cross-examination of the witness, Jackson, both Jackson and the attorney for the defendant referred to these warrants as the four fictitious warrants that were cashed on August 30th.

State's exhibit Nos. 10 and 11 were two of the warrants which were deposited to the credit of the defendant by his friend, Ray Moore, on July 26, 1938. The testimony

showed that the defendant gave these warrants to Ray Moore to deposit to his credit; and at the time they were handed to Moore by the defendant, the endorsements of the names of the payees were on the warrants. These warrants were cashed and the money given to the defendant by Moore. These warrants were handled along with other warrants, which the defendant concedes are forgeries, and are all admissible for the reason that they are so closely linked together that they are all a part of the same transaction.

It is next contended that the court erred in admitting state's exhibit No. 12, being the state highway pay roll, with specific reference to the signature of Harold Jones appearing thereon. The proof showed that the defendant wrote the name of Harold Jones on certain highway warrants, payable to Jones and known as state's exhibits Nos. 2, 5, and 8. The defendant claimed that he had never heard of Harold Jones, but admitted that he knew the teacher of music in the Indiahoma schools, and claimed to know him by his nickname of "Chink" Jones. The question as to whether the defendant signed the name of Harold Jones on the pay roll became very important for the reason that if it could be established by the state that the defendant had signed the name of Harold Jones to the pay roll, no plausible excuse or pretense of good faith could have been made by the defendant in his explanation to the jury. The proof established that the defendant had endorsed the name of Harold Jones on the warrants, known as state's exhibits Nos. 2, 5, and 8, and the defendant having written the name of Harold Jones five times upon a blank sheet of paper which was admitted in evidence without objection as state's exhibit No. 13, the jury was entitled to have the pay roll admitted in evidence for the purpose of comparing it with the admitted signatures of

the defendant for the purpose of enabling them to determine the question of fact as to whether the defendant had signed said name on the pay roll.

In the early Colorado case of Wilber v. Eicholtz, 5 Colo. 240, 23 P. 240, it is stated:

"The execution of the note having been denied by a portion of the defendants by a plea verified by affidavit, the jury was permitted to compare the signatures of the defendants subscribed to this affidavit, and likewise their signatures subscribed to the affidavit of merits filed in the cause, with what purported to be the signatures of the same defendants to the note in suit." See, also, Bradford v. People, 22 Colo. 157, 43 P. 1013.

In 20 Am. Jur. 618, § 742, it is stated:

"The most satisfactory proof of handwriting is, of course, the testimony of the person whose writing is in issue, if he is available as a witness. If he is unavailable, the next best proof is the testimony of a witness who saw the instrument in question executed and is able to identify it. The next best testimony is thought to be that of witnesses who have seen the party whose writing is in controversy write or who have had access to, or possession of, his writing so as to impress the character of the writing upon the mind and are able to form an opinion by comparing the impression of the writing on their mind with that which is admitted for examination. According to the earlier common-law rule, these were the only methods of proof that could be made. According to this earlier rule, the trier of facts was not entitled to determine the genuineness of a disputed writing or signature by a comparison thereof with a specimen of the person's writing admitted or proved genuine. This view of the matter is now, however, generally repudiated, although there is some difference of opinion regarding what may be used as a standard of comparison. It is now generally, if not universally, recognized in cases where an issue is raised of the genuineness of a written instrument or of a signature to an instrument that proof of the genuineness of the writing

or signature may be made by comparison with other writings of the same person, which are either admitted or proved to be genuine specimens and which are submitted to the court and jury to enable them to determine the question by their own observation and judgment. It is also generally agreed that expert testimony may be received, without encroaching upon the functions of the jury, based upon conclusions drawn by an expert witness from his comparison of the writings."

This contention of the defendant and the authorities cited in his brief are all based upon the proposition that the specimen used for comparison was disputed, and that it was an attempt by the state to prove the genuineness of his signature by comparing this writing with that of another alleged writing of the defendant, but which was also disputed. The endorsement of the name of Harold Jones on the back of the warrants is not disputed. Clarence Jackson testified positively that the defendant endorsed the name of Harold Jones on state's exhibit No. 2. The defendant says that he endorsed some of the names on the warrants and that the signature of Harold Jones on the back of state's exhibit No. 2 and, also, on the back of state's exhibits Nos. 5 and 8 appear to be in his handwriting. This was sufficient proof to authorize the use of these exhibits as a standard for comparison with the disputed writing. Hickory v. United States, 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170; Boyd v. Gosser, 78 Fla. 64, 82 So. 758; People v. Driggs, 14 Cal. App. 507, 112 P. 577.

Lastly, it is contended that the court committed reversible error in refusing to instruct the jury that the witness, Clarence Jackson, as a matter of law, was an accomplice of the defendant.

The requested instruction of the defendant is as follows:

"You are instructed as a matter of law that if you believe the evidence of the witness, Clarence Jackson, to be true that by his own testimony the witness, Clarence Jackson, is an accomplice in the commission of the offense with which the defendant stands charged, but you cannot find the defendant, Bryan B. Burns, guilty by reason of the testimony of the said Clarence Jackson alone until you are satisfied beyond a reasonable doubt that the same has been corroborated by other evidence tending to establish the fact that the defendant did in fact commit the offense charged in the indictment, and in this connection you are instructed that the corroboration herein mentioned need not be by eyewitness alone to the commission of the offense, but such corroboration may be by circumstances, and you may take into consideration all the facts and circumstances proven in the case in determining whether or not the defendant is guilty of the offense charged in the indictment."

The court refused to give the above instruction requested by defendant, but in lieu thereof gave the following instruction:

"Should you find in this case that certain witnesses introduced upon the part of the state aided, abetted, or assisted in uttering and passing the forged warrant in controversy, then you are instructed in the law they are known as accomplices, and you cannot convict the defendant upon the evidence of a witness or witnesses whom you find to be accomplices, unless he or they be corroborated by such other evidence as tends to connect the defendant with the commission of the offense. And the corroboration is not sufficient if it merely shows the commission of such offense, or the circumstances thereof.

"An accomplice, as the word is here used, means anyone connected with the crime committed, either as principal offender or as an accessory, or one who aids and abets in the commission of the offense. It includes all persons who are connected with the crime by unlawful acts on their part committed, either before or at the time of the commission of the offense."

In the case of L. Jones v. State, 69 Okla. Cr. 244, 101 P. 2d 860, this court drew the distinction between the offense of forgery and that of uttering a forged instrument. These are two wholly distinct crimes.

As was stated in the third and fourth paragraphs of the syllabus of Jones v. State, supra:

"To constitute the offense of forgery, the following three essential elements must exist: There must be a false writing or alteration of an instrument; the instrument, as made, must be apparently capable of defrauding; and there must be an intent to defraud.

"To utter a forged instrument is to put it in circulation, or to offer to do so, with fraudulent intent to injure another."

In Wells v. Territory, 1 Okla. Cr. 469, 98 P. 483, 484, it is stated:

"We believe the indictment is bad for duplicity, in charging two distinct offenses in one count; that is, the uttering of the check, knowing it to be forged, and the forging of the indorsement thereon, and then uttering the same. The offenses are distinct, arising upon different acts, and each constitutes the offense of forgery in the second degree. Under the * * * provisions of the Code, it was necessary to set forth the separate counts, the uttering and the selling or exchanging of said check, knowing it to be forged, and the forging of the indorsement thereon, and the selling, exchanging and delivery with the forged endorsement."

There is no question but that under the evidence Clarence Jackson was a party to the forgery of the endorsement; however, the proof does not show that he took any part in the passing of the warrant. He was not present when this instrument was deposited, nor did he participate in the proceeds received from the warrant.

However, the fact that Jackson was admittedly an accomplice in the forgery of the endorsement of J. W. Fagg

does not preclude him from also being an accomplice in the crime of uttering said instrument with a forged endorsement thereon.

This court has on numerous occasions defined an accomplice as one culpably implicated in the commission of a crime of which the defendant is accused, or one who knowingly and voluntarily co-operates, aids, or assists in the commission of the crime. McKinney v. State, 20 Okla. Cr. 134, 201 P. 673; Logan v. State, 23 Okla. Cr. 316, 214 P. 944.

If the defendant had not requested that the court instruct the jury as a matter of law that the witness Jackson was an accomplice of the defendant in the alleged crime charged, but the court had on its own motion given such instruction over the objection of the defendant, then the defendant could have found authority in the decisions of this court to sustain a contention that such action of the court would have been error. Carter v. State, 55 Okla. Cr. 234, 28 P. 2d 581, 583.

In that case it is stated:

"Counsel here argue that where defendant denies generally any connection or accomplicity with the witness who is designated as an accomplice, the court, regardless of the testimony of the witness, in no event may instruct the jury that the witness is an accomplice. Surely this cannot be what is meant, for if defendant enters a plea of not guilty and contests the truth of the state's testimony of a claimed accomplice to prove his guilt, he does not admit the testimony of such witness, for to do so would be tantamount to a plea of guilty. Nor does the fact that he denies the testimony of the witness designated as accomplice make the testimony disputed within the meaning of the term as used in the cases generally. That is to say a denial of guilt and general testimony by accused that he had no connection with the witness testifying as an accomplice is not the dispute meant in the various decisions. But on the

other hand where he testifies to the state of facts detailed by the witness, or admits a connection with the witness tending to show an accomplicity, but explains his connection and disputes and denies the significance and tendency of the evidence to prove accomplicity, then an instruction on such contested evidence that the witness is an accomplice, may amount to a charge on the weight of the evidence or may be an assumption that the testimony of the witness was true and that of defendant necessarily untrue. But not so when he does not testify to the state of facts detailed by the witness, but merely denies generally any connection with the witness." See, also, Comba v. State, 68 Okla. Cr. 373, 99 P. 2d 170.

Here we find the defendant admitting the facts to which Jackson testified concerning the endorsement of Fagg's name on the warrant in question, but he explains his connection and denies the significance which the state attaches to this incident. Under the reasoning in Carter v. State, supra, it would have been error under this state of facts to have charged that Jackson was an accomplice as a matter of law.

Instruction 4, complained of by the defendant, hereinabove set out, is a correct, abstract statement of the law. It is not insisted by the defendant that the evidence is insufficient to corroborate the testimony of the alleged accomplice, but it is expressly admitted in the defendant's reply brief that the evidence is sufficient under the statutes and decisions of this court to sustain the conviction.

It is doubtful whether under the evidence Jackson could be convicted for the offense of uttering a forged instrument. If a conviction could not be upheld under the record for this offense, then he is not an accomplice.

There is another reason why the court did not err in refusing to give the requested instruction of the defendant. The substance of Clarence Jackson's testimony was that

J. W. Fagg's name was forged to the warrant in controversy, to the knowledge of the defendant.

The defendant in his own behalf admitted the forgery of the endorsement, his knowledge of the same, and the fact that he uttered and passed the instrument with J. W. Fagg's name forged thereon. His contention was that he had no intention to defraud; but under the admissions of the defendant, his connection with forgery of Fagg's name, so far detailed by Jackson, is uncontroverted.

In the case of Morgan v. Territory, 16 Okla. 530, 85 P. 718, the following is stated:

"Where the evidence in a criminal case, on behalf of the territory, sufficiently corroborates the evidence of an accomplice, and plainly shows the connection of the defendant with the commission of the crime, and where the defendant, when testifying in his own behalf, admits striking the blow with the weapon that caused the death of the deceased, the giving of an instruction defining the rule of corroborating evidence, which is not technically correct, but which is not misleading does not constitute error."

"The evidence of the territory in this case shows that the corroborating evidence was ample, and plainly shows the connection of the defendant with the commission of the crime. Not only this, but defendant when on the stand admitted striking the blow with the weapon which caused the death of the deceased, so that there could be no such condition arise as where the jury could, under any circumstances, have erroneously considered the evidence of the accomplice. It is in cases where the jury may, in considering the evidence, exclude or disbelieve certain portions of it, and in so doing, the remainder being insufficient to connect the defendant with the commission of the crime, render it necessary for the court to guide them by its instructions upon the rules governing the testimony of an accomplice, or when it may and when it may not be considered by them.

"If, then, in the case under consideration, there can be no condition arise in which the jury would be warranted in refusing to consider the evidence of the accomplice because of the corroborating evidence being insufficient to connect the defendant with the commission of the crime, the instruction with reference to the evidence of the accomplice would become almost, if not wholly, immaterial, and, even if erroneous, could not prejudice the rights of the defendant. In this case there was no contradiction whatever of any of the territory's witnesses, except by the defendant himself, who, when upon the witness stand, admitted, in substance, everything that had been testified to concerning his connection with the transaction, except that he claimed he struck the blow in self-defense, having after getting into the altercation and being struck at by the deceased with a neckyoke, and believing himself to be in imminent danger of great bodily harm, opened his knife and stabbed the deceased."

The reasoning in the above case is sound, and we think the principles therein announced are applicable to the instant case.

The defendant's evidence showed his connection with the alleged offense, and the only question for the jury to determine was whether the actions of the defendant were in good faith and without intent to defraud.

In the defendant's brief it is stated by his counsel that the only issue is whether the defendant had an intent to defraud.

In considering this instruction, along with all of the other instructions and the evidence, we do not find that there was error in the court's failure to specifically instruct that Jackson was an accomplice.

It is not necessary for us to make any comment upon the evidence in this case. The guilt of the defendant was thoroughly established.

432

Under the facts confronting the defendant, his counsel have ably represented him. However, no reasonable jury under the record could have done other than find the defendant guilty.

The errors presented and argued by counsel for defendant are, all of them, what may be termed technical in their nature. Some authorities may be found to support the contentions made by counsel for defendant; but we are unable to see where, under the record, the defendant has been prejudiced in any of his substantial rights by reason of any of the matters about which he complains.

We have carefully examined the instructions given. As a whole they fairly and fully submit the issue to the jury, and cover the law of the case.

As is usual in a case where a person of prominence is involved, the case did attract wide interest. The case was hard fought; but we are unable to find, under the record, any errors which we consider of sufficient importance to require a reversal.

The judgment of the district court of Kiowa county is therefore affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.