**Thelma K. BROWN, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A–12015.

Criminal Court of Appeals of Oklahoma.

Sept. 15, 1954.

Rehearing Denied Oct. 13, 1954.

O. B. Martin, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant, Thelma K. Brown, was charged in an indictment presented and filed in the District Court of Oklahoma County with the crime of forgery in the second degree, it being alleged in the indictment that the accused did utter and pass a forged and counterfeit check in the amount of $77.57 to the Capital Finance Company which check bore the name of one Pauline Farris as endorser thereon, when in truth and in fact the said Pauline Farris was a fictitious person etc.; was tried and con-

victed but the jury being unable to agree upon the punishment, left the same to be fixed by the court. Thereafter, the defendant was sentenced to serve 3 years imprisonment in the penitentiary.

The following assignments of error are presented: (1) The evidence was insufficient to sustain the conviction. (2) The trial court erred in admitting evidence of other offenses. (3) The trial court erred in admitting in evidence the confessions of accused. (4) The trial court erred in giving instruction number three. (5) The punishment was excessive.

In connection with the first assignment of error, it is the contention of defendant that the evidence of the State was not sufficient to establish the corpus delicti independent of defendant's extrajudicial confessions.

 In Ridinger v. State, Okl.Cr., 267 P.2d 175, 177, it was held:

"In every criminal prosecution it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused.

"The 'corpus delicti' means, when applied to any particular offense, the actual commission by some one of the particular offense charged.

"A conviction cannot be had upon a defendant's extrajudicial admissions alone, unless the state proves in some way the corpus delicti, independent of the defendant's admission. Direct and positive proof is not essential to establish the corpus delicti, and it may be proved by circumstantial evidence. When it is proved by circumstantial evidence, the question should be submitted to the jury along with other questions of fact in the case, as to whether or not the state has established the corpus delicti beyond a reasonable doubt.

\* \* \* \* \* \*

"Where the corpus delicti is established by independent evidence, a conviction based upon defendant's voluntary confession is warranted."

It becomes necessary to summarize the evidence to determine this question. The proof of the State showed that five citizens of Capitol Hill organized the Capital Finance Company in Oklahoma City in July, 1947. The defendant was employed as manager of the company with the sole authority to write all checks made for loans. It was the duty of the defendant as manager to get a complete credit report from the applicant for a loan including business references, their friends and associates and then to verify the facts stated in the loan application before making the loan. The accused was given authority to make such loans as in her judgment were good after the facts in support of the application had been verified. The defendant continued as office manager of the Capital Finance Company until the late summer of 1950 when the company sold out to the Postal Finance Company and she continued in the same position with the Postal Finance Company until December 11, 1950, when it was ascertained for the first time that there were irregularities based upon fictitious loans which had just been discovered which amounted to several thousand dollars.

On December 11, 1950, the defendant gave the Postal Finance Company a written statement in which she listed a large number of accounts made while she was manager of the Capital Finance Company which were irregular and not authentic accounts. Some of these accounts were in the names of real persons, but many of them were in the names of fictitious persons. As to the particular account of Pauline Farris which was involved in the indictment herein, the confession states:

"Account No. 2389, Farris, Pauline. I signed it and the money applied to various accounts in the office. No such person exists."

Frank Vossburgh who succeeded defendant as manager of Postal Finance Company identified the Pauline Farris file prepared by the defendant in connection with a loan purportedly made to one Pauline Farris. This file disclosed that a loan of $214 which included a fee of $10 and $4 insurance

premium was made to Pauline Farris on June 29, 1949, and that on August 4, 1949, a new note was made for $300 refinancing the first loan which included a further cash advance purportedly made to Pauline Farris in the amount of $77.57. A check issued to Pauline Farris in the amount of $77.57 by the defendant was admitted in evidence. This check purportedly bore the endorsement of Pauline Farris and was cashed as it shows on its face by the Capital Finance Company and then deposited to their account in the Liberty' National Bank. It was this particular check which formed the basis for the indictment herein involved. In connection with the application for the loan there appears the application in the handwriting of the defendant which was not signed by the applicant but on the application are listed four business firms in Oklahoma City as credit references and further referred to Mayme Campbell as her landlady and the address of Pauline Farris was given as 2770 Northwest 17th Street in Oklahoma City, and that she was employed by the Oklahoma Gas and Electric Company and had been so employed for 17 years. The defendant as office manager had written on the loan application the following: "Mayme known her for years. Said O.K. Would even sign if necessary. Good enough for me." Mr. Vossburgh testified that on December 4, 1950, the defendant in discussing the Pauline Farris loan told him that she had contacted Mayme Campbell about the loan and Mayme Campbell had told her that Pauline Farris had a political job the first of the year and would be back then.

Mayme Campbell testified that she was a beauty operator and had known the defendant for several years. She testified she lived at 2770 Northwest 17th Street in Oklahoma City which was the address given on the application for the loan as the address of Pauline Farris. Miss Campbell testified that she did not know a Pauline Farris, that such person had never lived at that address and that she did not tell defendant that Pauline Farris was O.K. nor did she later tell her that Pauline Farris had a political job and would be back the first of the year. Individuals'

who had charge of the credit accounts of the four business firms listed in the application for the Farris loan, each testified that no such person was known to them and that no such person by that name had an account or credit rating with their business concern. Vossburgh and Herman Merson, one of the original incorporators of the company, testified to efforts which they made to locate Pauline Farris. She was not employed at the Oklahoma Gas and Electric Company and had never been according to the records of that company. From checking all the references in the application they were unable to find any trace of such person. Merson made an extensive investigation and could find no trace of a person by the name of Pauline Farris.

Kenneth D. Garrett, F. I. Watson, Robert L. Radcliff, Dilver Peelman and A. O. Brinlee each testified that they had never made application for nor received a loan from the Capital Finance Company. Checks made payable to them in various amounts were offered to these individuals for their inspection. Each of these checks had been cashed at the Capital Finance Company by the defendant. These individuals stated that their names which appeared on the respective checks so identified and offered in evidence were forgeries, and that they had not endorsed their names thereon and knew nothing about the alleged transaction in connection with these purported loans made to them.

Jake Sureck, a certified public accountant, audited the books for Capital Finance Company. He suggested that the owners keep a closer check on the internal affairs of the company, and in accordance with his suggestion a form letter was prepared to be sent to each person shown on the books of the company as obtaining a loan, asking for confirmation and to check the accuracy and correctness of the loan agreement. Such a letter was mailed to Pauline Farris at the address shown on her application and the form letter with the inquiry was returned purportedly signed by Pauline Farris stating that the information as to her loan was accurate. Mayme Campbell testified that the defendant, Thel-

ma Brown, inquired about a letter which would be received at that address and asked Miss Campbell to give the letter to her when it came. At the time of her testimony she did not recall the name of the person to whom the letter was addressed but when it came, she gave it to the defendant.

██ It is clear from the above summary of the evidence that there is no direct evidence that Pauline Farris was a fictitious person aside from the extrajudicial admissions of the accused. The State's case of forgery is based upon their allegation that Pauline Farris was a fictitious person and that the accused endorsed her name upon a check and uttered and passed the check to the finance company with the intent to defraud the company. There is no question but what the company suffered a loss in the amount of money purportedly paid to the said Pauline Farris. We have these strong circumstances: (1) Farris was unable to be located by that name in Oklahoma City at any of the places mentioned in her application nor in any other place. (2) The defendant entered a false statement on her application when she said that she had talked to Miss Campbell concerning Pauline Farris and that Miss Campbell stated she was a good risk. (3) The unsigned loan application and the fact that the check was cashed by defendant at the finance company office are also circumstances which although standing alone might appear harmless but when considered with all the other facts and circumstances point to the fictitious character of the supposed applicant for the loan. (4) The delivery by Miss Mayme Campbell to defendant of a letter which came to her address at the request of the defendant is another strong circumstance showing the fictitious nature of the loan and that the accused knew of its false character. We can conceive of circumstances where an applicant for a loan might give a fictitious name and refer to fictitious characters for references and the loaning agency in good faith might make a loan to such person. However, the fact that such might be done affects only the weight which would be given to the strong

circumstances proven by the State and not to their admissibility or to their effectiveness in establishing the corpus delicti. We believe from an examination of all the facts and circumstances that there was sufficient evidence to submit the issue as to whether a crime had been committed independent of the evidence as to defendant's extrajudicial admissions to the jury for their determination. If the jury found that the corpus delicti had been established, then the confessions of the accused were sufficient to convict her. We think the statements made by this court in the case of Frye v. State, 25 Okl.Cr. 273, 219 P. 722, 724, are applicable to the situation here presented. it was there stated:

"The claim that the corpus delicti was not proven, obviously is without merit. The 'corpus delicti' means, primarily, 'the body of the offense'; but in applying it, courts and text-writers have not at all times agreed as to what is meant by the 'body of the offense.' This court holds that the term means, when applied to any particular offense, that the particular crime charged has actually been committed by some one. Green v. State, 7 Okl. Cr. 194, 122 P. 1108; Brown v. State, 9 Okl.Cr. 382, 132 P. 359.

"Direct evidence to establish the corpus delicti is not required. Circumstantial evidence may be resorted to for the purpose of proving the corpus delicti in the same way and to the same extent that it may be for the purpose of connecting the accused with the commission of the offense. The same evidence which tends to prove one may also tend to prove the other, so that the commission of the crime and the guilt of the accused may stand together inseparable on one foundation of circumstantial evidence. George v. United States, 1 Okl.Cr. 307, 97 P. 1052, 100 P. 46.

"McClain says:

" 'The corpus delicti need not be shown by direct evidence, that is, there need not necessarily be proof of loss of property by theft distinct from the fact showing that property

found in the defendant's possession was wrongfully taken from the owner thereof. Proof of the act is not necessary where the circumstances can only be explained by a felonious act.' 1 McClain on Criminal Law, § 612."

As to the contention that the trial court erred in admitting evidence of other offenses, the record discloses that certain individuals as mentioned in the above summary testified that the names and addresses appearing on certain loan papers and notes purporting to be the names and addresses of the witnesses were not their genuine signatures and they had not made application for nor received the loans purportedly made to them. The admission of this evidence was over the objection and exception of defendant. The trial court correctly admonished the jury that the evidence was not being admitted for the purpose of showing the guilt of the accused of the specific charge being tried, but was admitted for the limited purpose of showing a general plan, scheme or unlawful intent on the part of the accused.

The State's evidence including the written confessions prepared by the defendant showed that she had entered into a scheme or plan to obtain money from the finance company by virtue of forging applications for loans and making false and forged applications. In cases similar to the instant case, the evidence of other offenses has been held admissible for the purpose of showing a scheme, plan or motive on the part of the accused in the commission of the act charged. Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 779; Reniff v. State, 53 Okl.Cr. 448, 13 P.2d 592; Burns v. State, 72 Okl.Cr. 409, 117 P.2d 144, 145. In Burns v. State, supra, this court held:

"In a prosecution for uttering a forged instrument with intent to defraud, evidence of similar acts of forgery or uttering is admissible for the purpose of showing a common scheme, plan or motive, or as bearing on the question of intent with which the act charged was committed."

In connection with the third assignment of error directed at the admission of certain confessions allegedly made by the accused, the record discloses that when the objection was made, the jury was excused and the court heard evidence in the absence of the jury. Defendant testified that David Levitt, president of Postal Finance Company, was checking through her accounts and told her that some of the accounts were bad and the loan applicant could not be located; and that he threatened to have her thrown in jail unless she would type the list of bad accounts so that they could collect from the bonding company. That if she refused to make the list of accounts, he would have her sent to jail; but if she made the list of bad accounts, then nothing would be done to her and the Postal Finance Company would recover the money which they had paid to Capital Finance Company involving the bad accounts.

The record discloses that defendant made three written admissions in connection with alleged irregularities in her conduct of the affairs of the Capital Finance Company. One of these was made on December 11, 1950, another on December 12 and a third on December 15 in the office of Herman Merson, an attorney.

Mr. Levitt testified he did not promise or threaten defendant to secure the first statement which she made but that it was dictated to Mrs. Sickles, a stenographer, by the defendant, who looked at each individual card and folder in the file before giving a statement pertaining to it; and Mrs. Sickles typed the statement and the accused signed it. Mrs. Sickles verified the testimony of Levitt. The second statement was given to Mr. Levitt, Mrs. Sickles, Jack Thompson and Vossburgh who testified that defendant did it voluntarily without any threats, coercion or promises. At the time the third signed statement of the accused was offered in evidence, her counsel made the statement that it was voluntarily given and no objection was made to it. This was the statement given in the office of Attorney Merson. In this third statement defendant repeats that the prior two statements which she had made were voluntarily given. After the evidence pertaining to the admission of the confessions had been concluded, the

court decided that owing to the conflict in the testimony, the question of the voluntariness of such confessions should be submitted to the jury and after the jury had been recalled, the evidence as to their voluntary character was repeated in the presence of the jury. We think the court's finding was proper. In Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989, 990, it was held:

"Where the question arises as to whether a confession is voluntary or involuntary, the correct procedure is for the court to immediately withdraw the jury, and hear all of the evidence both for and against the competency of the same, and all the facts and circumstances under which the same was made, and decide whether the confession was voluntary or involuntary. If voluntary, it may be presented, together with all the facts and circumstances surrounding the giving of the same, to the jury. If involuntary, it is inadmissible.

"If a court decides that a confession is admissible in evidence as a matter of law the court may then by proper instructions present to the jury the question of the voluntariness or involuntariness of the confession, and permit them to pass upon the evidence as to whether the confession was freely and voluntarily made, and if they find it was, to give it consideration, and if they find it was not freely and voluntarily given that they should disregard the same, and not consider it as evidence against the party giving it."

The next assignment of error is directed at the giving of instruction number three which reads:

"The Statutes of this State provide as follows: Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree.

"Forgery in the Second Degree is punishable by imprisonment in the State Penitentiary not exceeding seven years."

■ No exception was taken to the giving of this instruction. It is contended that it was fundamental error to give such instruction because the instruction fails to submit to the jury the minimum punishment. Under the statute providing the penalty upon conviction for forgery in the second degree, it is provided that it may be punishable by imprisonment in the penitentiary for a term not exceeding 7 years. 21 O.S.1951, § 1621. The instruction which was given was in the language of the statute. There is no minimum punishment fixed by the statute. This precise question was raised and passed upon in the case of Hill v. State, Okl.Cr., 266 P.2d 979, 981, wherein it was held:

"An instruction in the language of the statute defining the terms of punishment in case of a conviction was not erroneous for failure to state a minimum punishment as the statute in question fixed a maximum punishment but no minimum."

■ As to the alleged excessiveness of the sentence, the record discloses that before the sentence was pronounced, application was presented on behalf of the accused for a suspended sentence and six witnesses were heard in connection with such application. The testimony of these witnesses was not included in the case-made. The trial court fixed the punishment of the accused at 3 years imprisonment. The maximum sentence which could have been assessed was 7 years in the penitentiary. Several thousand dollars were taken by the accused through the manipulations which she made as man-

ager of the finance company. It is true that these losses were made good by the indemnity companies which wrote the bonds covering the activities of the accused as manager of the finance company. The defendant herself paid several hundred dollars on the loss. It is apparent from the record that the accused had borne a good reputation and had acted as an honest and faithful employee of the finance company until after her marriage in 1949. Her husband became in need of money and it was to pay on his debts that the defalcations were committed originally. In many of the cases where the irregular loans were prepared, the husband brought individuals to the finance office who would sign the papers needed to be signed to secure a loan and would receive very little money for the performance of such act but the husband of defendant would receive the balance of the money issued in connection with such purported loan. Later the defendant and her husband were divorced on February 15, 1951. The question as to the proper amount of punishment to be inflicted in a case such as this is a most difficult one to determine. We feel that the trial judge should be in a better position to render a fair judgment where the sentence to be pronounced is left to him than this court, because he has had an opportunity of hearing the evidence and of observing the demeanor of the witnesses, and unless this court can say after an examination of the record that the sentence thus imposed by the trial court is so excessive that it is manifestly unfair and apparently given under passion or prejudice, we should not modify the sentence so imposed. We do not feel that we would be justified in interfering with the sentence which was pronounced in this case although as individuals, this court, if placed in the position of the trial court, might have given a lesser punishment; still, we cannot determine that the punishment which was rendered is so excessive as to say that it was prompted by passion or prejudice. The judgment and sentence of the District Court of Oklahoma County is accordingly affirmed.

POWELL, P. J., and BRETT, J., concur.